IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 98-60304

---

GERALDINE GAMMAGE

                                        Plaintiff-Appellant,

versus

WEST JASPER SCHOOL BOARD OF EDUCATION; WEST JASPER SCHOOL DISTRICT
                                        Defendants-Appellees.

---

Appeal from the United States District Court
For the Southern District of Mississippi

---

June 28, 1999

Before POLITZ, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Geraldine Gammage urges that the district court erred in disposing of her ADA claim on summary judgment on grounds of claim and issue preclusion. We conclude that issue preclusion bars Gammage's federal ADA claim, so we AFFIRM.

I.

In February 1995, Principal Elijah J. Buckley delivered a memorandum to Geraldine Gammage, a veteran teacher in the West Jasper County School District, advising her that he would recommend to the School Board that her contract not be renewed for the following school year. Then, in March 1995, Principal Buckley and Superintendent Charles Lyle informed Gammage that the West Jasper

School District Board of Trustees had voted to accept Principal Buckley's recommendation not to renew her contract.

Then, pursuant to Gammage's request and in accordance with Mississippi's School Employment Procedures Act ("SEPA"), MISS. CODE ANN. § 37-9-101 *et seq.*, an extensive nonrenewal hearing was conducted. The hearing covered a period of 11 days and generated a transcript numbering 2170 pages. In addition, over 60 exhibits were introduced. Gammage and the school district were both represented by counsel. On December 22, 1995, the hearing officer rendered his Findings of Fact and Conclusions of Law, wherein he upheld the nonrenewal decision. The School District's Board of Trustees subsequently reviewed and adopted the hearing record and the hearing officer's decision.

On February 8, 1996, Gammage appealed the Board's decision to the Jasper County Chancery Court, in accordance with the review mechanisms provided by SEPA. While her appeal to the Chancery Court was pending, she filed a lawsuit in federal district court pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12102, and Title VII of the Civil Rights Act, 42 U.S.C. § 20003, charging that the School Board and the School District had terminated her employment on account of a disabling kidney disorder from which she suffered and for which, she alleged, they had failed to make reasonable accommodation. On June 11, 1997, the defendants in the federal suit filed a motion urging the district court to abstain pursuant to the abstention principles of *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny. On June 24, 1997, while that

2

motion was still pending, the Chancery Court upheld the School Board's decision. Gammage then filed a notice of appeal to the Mississippi Supreme Court. On October 2, 1997, the district court granted the defendants' abstention motion.

Eventually, Gammage voluntarily dismissed her state appeal, and, as a result, on April 13, 1998, the district court lifted its stay. Then, on April 22, 1998, the district court granted the defendants' motion for summary judgment on the grounds that the claim preclusive and issue preclusive effect of the state court judgment barred Gammage's federal ADA claim. Gammage filed a timely appeal.

## II.

Title 28 U.S.C. § 1738 governs the preclusive effect to be given the judgments of state courts: a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. The preclusion doctrines of Mississippi apply here, and Mississippi law precludes a party from relitigating "a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." *Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So. 2d 749, 751 (Miss. 1982).

Gammage's ADA claim rests primarily on a theory of failure to provide reasonable accomodation. In addition, Gammage's federal complaint, read generously, alleges an ADA violation on a theory of animus discrimination. Gammage's complaint also appears to allege

3

an ADA violation based on the School Board's and School District's use of standards or other criteria that constitute disability discrimination.

In its opinion, the Chancery Court addressed all three of Gammage's theories for recovery under the ADA. The court stated that Gammage's argument for reversal of the Board's decision was "abject Handicap Discrimination." The Chancery Court continued: "[T]he Court is of the opinion that Plaintiff has wholly failed to establish the existence of 'abject Handicap Discrimination.'" In reaching this conclusion, the Chancery Court referred to a section in its findings of fact that pertained to Gammage's claim of handicap discrimination. In that section, the Chancery Court stated:

> No witness in these proceedings has testified that Plaintiff advised Principal Buckley, Superintendent Lyle or any other member of the faculty or staff of Defendant of any alleged medical problem which would prevent her from performing her assigned duties. Plaintiff did not, in fact, testify to same in her affidavit filed after completion of the hearing. Exhibit 44 is a letter from Philip Rogers, M.D., Hattiesburg Clinic, wherein Dr. Rogers indicates that "After Ms. Gammage has been on dialysis for approximately 12-13 treatments she should be reasonably stable and should be able to continue to function in her classroom as well as she ever has." At that time, she was taking treatments three times per week and had already completed some of these 12-13 treatments. Therefore, it is the conclusion of the Court that any deficiencies in Plaintiff's job performance was [sic] not related in any way to her health. There is no evidence that Mrs. Gammage was discriminated against due to her health.

Thus, the Chancery Court found that, while the administration knew of Gammage's disability from the doctor's letter, Gammage had failed to prove that the administration knew of any work-related

limitations that Gammage would experience as a result of her disability that necessitated accomodation. This court has noted that the term "discriminate" in the context of the ADA "includes not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability . . . ." *Riel v. Electronic Data Sys. Corp.*, 99 F.3d 678, 681 (5th Cir. 1996)(emphasis added)(citing 42 U.S.C. § 12112(b)(5)(A)). And, "[f]or purposes of proving ADA discrimination, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities." *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). Furthermore, the ADA does not require an employer to assume that an employee with a disability suffers from a limitation; as a result, it is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom. *See id.* Thus, the Chancery Court's determination on the knowledge issue -- that the School Board and School District did not know of any limitations stemming from Gammage's condition which required accomodation -- is relevant to Gammage's federal ADA lawsuit because, in order to bring a successful ADA claim based on failure to provide reasonable accomodation, an employee must prove that the employer knew of the employee's substantial physical limitation.

5

Furthermore, the Chancery Court concluded in its opinion that there was no merit to a claim of animus discrimination when it stated that there was no evidence that the School Board or School District had discriminated against Gammage due to her health. The court also negated Gammage's argument that the School Board and School District instituted standards that screened her out because of her disability when it determined that the deficiencies that led to her nonrenewal were unrelated to her condition.

The Chancery Court's conclusions on these issues have preclusive effect, thereby barring Gammage's federal ADA claim, if the issues were fully litigated in the administrative proceedings and if the court's conclusions were essential to its judgment. We find that the extensive administrative hearing satisfies the requirement that the issues have been fully litigated. Moreover, the determinations were essential to the judgment because the Chancery Court's obligation to review the decision of the School Board included a statutorily mandated review to determine whether the decision of the Board violated some statutory or constitutional right of the employee. *See* MISS. CODE ANN. § 37-9-113 (stating that the scope of review of the Chancery Court includes a review to determine if the nonrenewal decision was "in violation of some statutory or constitutional right of the employee"). That is, the Chancery Court had to determine whether the nonrenewal decision violated Gammage's right to be free from disability discrimination, and the court's conclusions on each of Gammage's alleged grounds

6

for ADA violations were essential to determining that Gammage's rights were not violated.

## III.

In sum, we find that the Chancery Court's determinations regarding handicap discrimination are issue preclusive and bar Gammage's federal ADA claim.  AFFIRMED.