United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 16, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 06-11163
consolidated with
No. 06-11387
Summary Calendar

_____

GRETA CRAWFORD

Plaintiff-Appellant

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED
STATES OF AMERICA

Defendants-Appellees

- - - - - - - - - - - - - - - - - - - -
Appeals from the United States District Court
for the Northern District of Texas
No. 3:04-CV-2619
- - - - - - - - - - - - - - - - - - - -

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

Before the court is an appeal of multiple district court orders by Plaintiff-Appellant Greta

Crawford ("Crawford"), proceeding pro se. This appeal follows the dismissal of Crawford's suit

against Defendants-Appellees the United States Department of Homeland Security ("DHS") and

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE
47.5.4.

1

the United States of America ("United States") (collectively "the government"). After careful consideration and review of the district court's orders, we find no reversible error and therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The suit arises from the government's decision not to hire Crawford for the position of immigration inspector with the DHS. Crawford, an African-American female, applied for the position of immigration inspector on May 4, 2002. The Office of Personal Management ("OPM") conducted a background investigation on behalf of DHS and made a preliminary determination that Crawford was unsuitable for employment based on its findings of "misconduct or negligence in employment" and "criminal or dishonest conduct." The misconduct finding stemmed from comments made by Crawford's former supervisor at Backus & Associates ("Backus"), where Crawford had previously been employed. The supervisor reported that Crawford was prone to explode in tirades of foul language at the slightest provocation, believed the government was out to get her, and demonstrated an aggressive distaste for her co-workers. Crawford was ultimately fired from this position. The criminal or dishonest conduct finding was based on three events: (1) Crawford's arrest and psychiatric evaluation in April 2001 after she was found banging her head against the wall of her apartment; (2) her arrest in July 1996 for assaulting her ex-boyfriend; and (3) her June 1996 conviction for being drunk in public.

The government notified Crawford of its determination that she was unsuitable for the position of immigration inspector in a "show cause" letter issued on December 17, 2002. The letter described the specific allegations upon which the OPM based its determination and gave Crawford an opportunity to respond with an explanation or documentary evidence to dispute the

2

allegations.[1] Crawford submitted a response on February 1, 2003. Stanley Johnson ("Johnson"), a hiring director at the DHS, then made the final decision that Crawford was unsuitable for employment as an immigration inspector in May 2003. Crawford appealed the decision in June, and a hearing took place before an administrative law judge ("ALJ") in November 2003. The ALJ found that the DHS failed to prove the allegations regarding Crawford's April 2001 arrest and July 1996 arrest by a preponderance of the evidence. However, the ALJ determined that the DHS did provide sufficient evidence of Crawford's misconduct while employed at Backus and her June 1996 conviction for being drunk in public. The ALJ rejected Crawford's claims that she had been discriminated against on the basis of race, gender, and disability and retaliated against for filing suit against the government in 2001. Consequently, the ALJ sustained the DHS's determination of unsuitability. Crawford filed a petition for review of the ALJ's decision with the Merit Systems Protection Board ("MSPB") on January 21, 2004, which was denied.

Crawford then filed the instant lawsuit against the government on December 9, 2004, bringing twenty-three causes of action.[2] The government filed a motion to dismiss, which the

---

[1] The show cause letter stated that Crawford had resigned from Backus to avoid being fired; however, Crawford has admitted that she was fired from Backus.

[2] Crawford's claims, as described in her complaint, were:

**1st Claim for Relief:** Dismissal of Remaining Agency Charges and Finding of Unsuitability;
**2nd, 3rd and 4th Claim[s] for Relief:** Due Process Deprivations and/or Failure to Adhere to Regulatory Provisions and Prohibited Practices and Denial of Confrontation and Cross-Examination;
**5th Claim for Relief:** Retaliation for Whistleblowing;
**6th Claim for Relief:** Discrimination;
**7th Claim for Relief:** Negligence;
**8th, 9th and 10th Claim[s] for Relief:** Right to Privacy and Contempt/Seals and Obstruction of Justice;
**11th Claim for Relief:** Harassment and Intimidation;
**12th Claim for Relief:** Conspiracy;

3

district court granted, dismissing twenty of Crawford's causes of action. The grounds for dismissal were (1) the claims were preempted by the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101, et seq. (2000), and (2) alternatively, to the extent Crawford was pursuing her claims through the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, et seq., she had failed to exhaust her administrative remedies. The claims remaining, then, were Crawford's appeal of the government's unsuitability finding, her retaliation claim under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), and her claims of discrimination on the basis of race, gender, and disability.

As the case progressed, the district court denied two motions by Crawford seeking leave to amend her complaint. The district court also denied several motions to recuse, motions to seal, and motions regarding discovery filed by Crawford. The district court ultimately dismissed Crawford's remaining claims on a motion for summary judgment filed by the government and awarded costs to the government. Crawford has appealed the district court's orders regarding: (1) the government's motion to dismiss; (2) the government's motion for summary judgment; (3) her motions for leave to amend her complaint; (4) her discovery motions; (5) her motions to recuse; (6) her motions to seal; and (7) the award of costs. We have jurisdiction as a final

---

**13th Claim for Relief:** Freedom of Expression;
**14th Claim for Relief:** Right to Association;
**15th Claim for Relief:** Equal Protection;
**16th and 17th Claim[s] for Relief:** Interference with Business Relations, and Injury to Reputation;
**18th Claim for Relief:** Assault;
**19th Claim for Relief:** Abuse of Process;
**20th Claim for Relief:** Intentional Infliction of Emotional Distress;
**21st Claim for Relief:** Malicious Prosecution;
**22nd Claim for Relief:** Spoliation; and
**23rd Claim for Relief:** Contract Claim.

4

judgment has been entered, <u>see</u> 28 U.S.C. § 1291, and now turn to the merits of the appeal.

## II. DISCUSSION

### A.      Motion to Dismiss

Crawford first appeals the district court's decision to grant the government's motion to dismiss, which was filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3] Federal courts have limited jurisdiction, and a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the claim. <u>See</u> <u>Home Builders Ass'n of Miss., Inc. v. City of Madison</u>, 143 F.3d 1006, 1010 (5th Cir. 1998). This court reviews a district court's grant of a motion to dismiss pursuant to Rule 12(b)(1) de novo. <u>LeClerc v. Webb</u>, 419 F.3d 405, 413 (5th Cir. 2005).  Here, the district court ruled that Crawford's constitutional, tort, and contract claims were preempted by the CSRA or, in the alternative, were not administratively exhausted under the FTCA, and dismissed them accordingly.

Turning first to the CSRA, we note that it provides a comprehensive framework for the judicial and administrative review of prohibited personnel actions taken against federal employees and applicants for federal employment.  Chapter 23 of the CSRA outlines the prohibited personnel practices and establishes merit-system principles that govern civil service employment. <u>See</u> <u>generally</u> 5 U.S.C. §§ 2301-02.  The CSRA also provides "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." <u>Rollins v. Marsh</u>, 937 F.2d 134,

---

[3] The district court noted that the motion to dismiss would have been more properly pursued as a motion pursuant to Rule 12(b)(6) for failure to state a claim.  Regardless, as our analysis shows, Crawford's claims were correctly dismissed.

5

137 (5th Cir. 1991) (internal quotation marks and citation omitted).

Given the remedial system set forth in the CSRA, we have held that the CSRA provides the exclusive remedy for claims against federal employers, thereby precluding any other causes of action. See Grishom v. United States, 103 F.3d 24, 26 (5th Cir. 1997) (per curiam); Rollins, 937 F.2d at 137-40. Consequently, courts have rejected constitutional, tort, and contract claims as being precluded by the CSRA. See, e.g., Bush v. Lucas, 462 U.S. 367, 368 (1983) (First Amendment claim); Grishom, 103 F.3d at 26 (First Amendment claim and claims under the FTCA); Rollins, 937 F.2d at 139-40 (constitutional claims and state common law claims); Wheeler v. Potter, No. 3:05-CV-0265-M, 2007 WL 268777, at *3 (N.D. Tex. Jan. 30, 2007) (contract claim).

The CSRA, however, specifically exempts discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as well as discrimination claims under the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq., from its coverage. 5 U.S.C. § 2302(d). It also provides that employment decisions may not be made in retaliation for an individual's disclosure of the government's violation of the law or its gross mismanagement of funds--the Whistleblower Protection Act. Id. § 2302(b)(8).

Here, all of Crawford's causes of action concern (1) the government's decision not to hire her and (2) the investigation conducted by the government in making that determination. Therefore, in light of the preclusive effect of the CSRA, the district court properly dismissed twenty of Crawford's causes of action, leaving only her appeal of the unsuitability determination, her discrimination claims, and her retaliation claim. Although Crawford argues that many of her claims are independent of the application process and do not fall under the CSRA, review of her

6

complaint shows that all of her claims are related to her interaction with the government regarding the position she was seeking. Accordingly, the district court properly dismissed twenty of Crawford's causes of action as precluded by the CSRA.[4]

**B.      Motion for Summary Judgment**

Following the district court's order on the motion to dismiss, Crawford's only remaining claims were (1) the appeal of her unsuitability determination; (2) her claim of retaliation for whistleblowing; and (3) her discrimination claims. The district court granted summary judgment on each claim, which Crawford contends was erroneous.

**1.      Standard of Review**

This court reviews the district court's grant of summary judgment de novo. Adams v. Travelers Indem. Co. of Conn., 465 F.3d 156, 163 (5th Cir. 2006). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); Adams, 465 F.3d at 163. If the moving party makes an initial showing that there is no evidence to support the non-moving party's case, the non-moving party must come forward with competent summary judgment evidence of the existence of a genuine fact issue. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986).

Here, our review and the district court's review of the MSPB's decision is constrained by

---

[4] Because we affirm the district court's ruling on the motion to dismiss under the CSRA, we need not reach the district court's alternative holding that Crawford failed to exhaust her administrative remedies for seventeen of her causes of action under the FTCA. See McAfee v. 5th Circuit Judges, 884 F.2d 221, 222-23 (5th Cir. 1989) (per curiam) (holding that court lacks jurisdiction over FTCA claims that are not administratively exhausted).

5 U.S.C. § 7703(c), which states--

> [T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be:
>
> > (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> >
> > (2) obtained without procedures required by law, rule, or regulation having been followed; or
> >
> > (3) unsupported by substantial evidence;
>
> except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have facts subject to trial de novo by the reviewing court.

Since Crawford brought both discrimination and non-discrimination claims, her appeal is a "mixed case" under 5 U.S.C. § 7703. See Aldrup v. Caldera, 274 F.3d 282, 285 (5th Cir. 2001). We must, therefore, accord deference to the MSPB's decision on Crawford's non-discrimination claims, but conduct a de novo review of Crawford's discrimination claims. Crawford argues that the district court erred by failing to decide her entire appeal by a de novo review. This argument is without merit, as § 7703 clearly requires a deferential standard of review for claims other than for discrimination. See 5 U.S.C. § 7703(c).

### 2.    Suitability as an Immigration Inspector

Crawford first contends that the MSPB erred in upholding the decision that she was unsuitable for the position of immigration inspector. We may not overturn the MSPB's decision unless it was arbitrary or capricious or unsupported by substantial evidence. Id.

Pursuant to 5 C.F.R. § 731.202(b), the government is to consider "[m]isconduct or negligence in employment" and "[c]riminal or dishonest conduct" as factors when making

8

suitability determinations. Evidence gathered in the OPM's background investigation showed both misconduct or negligence in employment and criminal or dishonest conduct by Crawford. Crawford's supervisor at Backus reported that Crawford had a propensity to "explode in tirades of foul language at the slightest provocation" and that Crawford believed that "the government was out to get her." Crawford also admitted in her application to DHS that she had been fired from this position. The government put on evidence that immigration inspectors are required to carry firearms, so applicants who are susceptible to any sort of tirade may reasonably be seen as unsuitable for that position. Crawford also admitted in her application for employment and in her sworn deposition testimony that she was arrested and convicted of being drunk in public in June 1996. Therefore, that finding by the government is undisputed.

In support of her claim that she was suitable for the position, Crawford argues that her infractions were minor, that she did not deserve to be fired, and that she was fired as a scapegoat for larger problems at Backus. The ALJ and MSPB heard this same evidence and still decided to uphold the unsuitability finding. Crawford has not shown that such decision was arbitrary or capricious or unsupported by substantial evidence. Crawford also argues that some of the evidence of her unsuitability is inadmissible hearsay and should not have been considered. However, Crawford herself admitted that she was fired from Backus and was convicted of being drunk in public. Therefore, regardless of any hearsay that may have been allowed into evidence, Crawford does not dispute the basic allegations that prompted the unsuitability finding. Consequently, the district court properly affirmed the MSPB's decision that Crawford was unsuitable for employment as an immigration inspector.

### 3. Whistleblower Protection Act Claim

Crawford next argues that the district court erred by affirming the MSPB's finding that Crawford had not been subjected to retaliation for her prior lawsuit against the United States in violation of the Whistleblower Protection Act. In its summary judgment order, the district court determined that there was no evidence that the decision-maker was aware of Crawford's earlier lawsuit and, therefore, could not have retaliated against her for bringing it.

The Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8), prohibits governmental agencies from taking adverse personnel actions against employees or applicants for employment because the employee or applicant disclosed information that the employee or applicant believed evidenced a violation of law by the government or gross mismanagement of funds. An employee or applicant may demonstrate that the disclosure was a contributing factor in the personnel decision with evidence that "the official taking the personnel action knew of the disclosure" and "the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)

Crawford filed a lawsuit against the Department of Justice in 2001. Her WPA claim is based on her belief that the government's knowledge of her lawsuit resulted in its decision to deny her application to be an immigration inspector. The district court ruled that Crawford failed to present competent summary judgment evidence showing that her 2001 lawsuit against the government was known to the decision-maker at DHS or that such knowledge was a contributing factor in the denial of her employment application by the DHS.

In support of her claim that Johnson, the decision-maker at the DHS, was aware of her 2001 lawsuit, Crawford asserts that in her response to the government's December 2002 show

10

cause letter she made references to her 2001 lawsuit. Her response to the show cause letter, however, is vague and non-specific, referring only to a "sealed complaint" she filed in federal court without identifying any defendants. It fails to put the reader on notice that Crawford made a disclosure that would entitle her to protection under the WPA.

As further evidence of a WPA violation, Crawford asserts that she was cleared by the OPM after her show cause response, but then later rejected. Crawford, however, failed to identify any evidence which shows that she was cleared by the OPM at any time. As the party opposing summary judgment, Crawford is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports her claim. See Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 of the Federal Rules of Civil Procedure does not impose a duty on the court to search the record for evidence that supports the non-moving party's opposition to the motion for summary judgment. Id.; see also Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-916 (5th Cir. 1992). Therefore, Crawford's failure to identify evidence that the OPM had cleared her is fatal to her argument.

Crawford's assertion that the OPM investigator had a copy of her 2001 complaint is similarly not supported by evidence. The summary judgment evidence showed that Johnson was the individual who made the decision not to hire Crawford. Crawford did not put on any evidence that he had possession of her 2001 complaint, nor did Crawford's evidence ever identify by name the person she claims had possession of the document. Crawford thus failed to specifically identify anyone who had knowledge of the suit and show that such knowledge was part of the determination that she was unsuitable. Given this lack of evidence, the MSPB's finding that there was no retaliation was not arbitrary or capricious, unsupported by substantial evidence, or

11

obtained without the procedures required by law. Therefore, the district court properly refused to reverse the MSPB on Crawford's WPA claim, and we affirm the district court.

**4.        Title VII Discrimination Claims**

We next turn to Crawford's claims of race and gender discrimination under Title VII. Pursuant to 5 U.S.C. § 7703(c), we review the district court's grant of the government's motion for summary judgment regarding Crawford's discrimination claims de novo, applying the same standard as the district court. See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

*a.        Disparate Treatment*

Title VII prohibits discrimination by employers "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a). Intentional discrimination can be proven by either direct or circumstantial evidence. Russell, 235 F.3d at 222. In order for evidence to be "direct," it must, if believed, prove the fact in question without inference or presumption. Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 415 (5th Cir. 2003) (citations omitted).

If no direct evidence exists, we use the familiar burden-shifting framework created by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under McDonnell Douglas, Crawford must first prove a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was not hired; and (4) the position was given to someone outside the protected class; or in the case of disparate treatment, show that others similarly situated were treated more favorably. See id.;

12

Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir. 2005).  If Crawford establishes a prima facie case, the burden shifts to the government to "articulate some legitimate nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802.  If the government meets this burden, Crawford must then create a genuine issue of material fact that either (1) the government's reason is not true, but is instead a pretext for discrimination; or (2) the government's reason, while true, is only one of the reasons for its conduct and that discrimination was a motivating factor in the government's decision.  See Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

Crawford first claims that she has direct evidence of intentional racial discrimination. Crawford asserts that statements of surprise made by the OPM investigator about the race of her boyfriend constitute direct proof of discrimination.  Contrary to Crawford's contention, such evidence cannot be said to be "direct evidence" of discrimination.  In order to conclude that these statements show a discriminatory purpose behind the government's decision, the court would have to use inference or presumption, as surprise as to the race of another's boyfriend is not a clear indication of racial discrimination and the OPM investigator was not the decision-maker in this case.  Therefore, the statements are not direct evidence that the government discriminated against Crawford.

Turning to the burden-shifting analysis for circumstantial evidence, we conclude that Crawford fails to establish a prima facie case.  Crawford does not offer any evidence that someone outside her race or gender was hired in her place and admits she is unaware of whom the government hired. She also fails to show that anyone from outside her protected group was treated more favorably than she.  Without such evidence, Crawford cannot establish a prima facie

13

case of discrimination.

Even if we were to accept Crawford's prima facie case of discrimination, the government has articulated legitimate and non-discriminatory reasons for rejecting Crawford, namely, the prior workplace misconduct and criminal conduct discovered in the OPM's background investigation. Crawford's argument that she did not in fact engage in the misconduct is insufficient to create a fact issue that these reasons are a pretext for race or gender discrimination. See Bryant v. Compass Group USA, Inc., 413 F.3d 471, 478 (5th Cir. 2005) (stating that "evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision"). She further offers no evidence that race or gender was a motivating factor in the government's decision. As stated by the district court, Crawford offers only "conclusory allegations, unsubstantiated assertions, and unsupported speculation," which are insufficient to prevent summary judgment. See Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). Consequently, the district court did not err in determining that Crawford failed to present competent summary judgment evidence in support of her disparate treatment claims under Title VII.

### b.    *Disparate Impact*

Crawford also asserts that the government's failure to hire her was because of disparate impact discrimination. Disparate impact discrimination claims concern employment practices that are facially neutral but have a significantly disproportionate impact on a protected class and cannot be justified by business necessity. See Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003); see also 42 U.S.C. § 2000e-2(k)(1)(A). Disparate impact claims do not require proof of discriminatory intent. Munoz v. Orr, 200 F.3d 291, 299 (5th Cir. 2000). Rather, disparate impact

14

claims focus on those facially neutral employment practices that create statistical disparities which disadvantage members of protected classes at a level functionally equivalent to intentional discrimination.  Id.

A prima facie case of discrimination by disparate impact requires that Crawford: (1) identify the challenged employment practice or policy, and pinpoint the government's use of it; (2) demonstrate a disparate impact on a protected group under Title VII; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. See Gonzalez v. City of New Braunfels, 176 F.3d 834, 839 n.26 (5th Cir. 1999).  The government may rebut a prima facie case of disparate impact by demonstrating that a challenged practice is a business necessity. Pancheco v. Mineta, 448 F.3d 783, 787 (5th Cir.), cert. denied, 127 S. Ct. 299 (2006).

Crawford insists that the government's use of background checks on prospective employees has a disparate impact on African-Americans and women.  As proof of disparate impact, Crawford provides statistics suggesting a disparity between the racial and gender makeup of immigration inspectors when compared with the general population.  Our precedent, however, suggests that the comparison must be made between the employer's work force and the pool of applicants.  See E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 579 (5th Cir. 2003) (comparing those hired with the pool of applicants); see also Hazelwood Sch. Dist. v. United States, 433 U.S. 299, 308 (1977) (noting "[w]hen special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value.").  While Crawford's statistics may be accurate, they are not properly tailored to create a prima facie case for disparate

15

impact, as she focuses on disparities with the general population, rather than the applicant pool.[5]

Further, even if the court accepted Crawford's statistical analysis, she has not shown that the use

of background checks is the cause of any statistical imbalance. As a result, Crawford has failed to

create a prima facie case of disparate impact discrimination, and the district court properly

granted summary judgment on this claim.

### 5.        Disability Discrimination Claim

In addition to Crawford's discrimination claims based on race and gender, Crawford

alleges she was discriminated against because of a perceived disability in violation of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112.[6] Although Crawford admits she is

not disabled under the ADA, she accuses the government of believing she was psychologically

impaired and discriminating against her accordingly.[7] As with her Title VII claim, Crawford

asserts that she suffered disparate treatment and disparate impact discrimination as a result of her

perceived disability.

#### a.        *Disparate Treatment*

Disparate treatment claims under the ADA are also governed by the three-step burden-

shift analysis created by McDonnell Douglas. Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir.

1999). To establish a prima facie case, Crawford must show that she "(1) suffers from a

---

[5] Crawford's contention that the district court raised this argument sua sponte is misplaced. The government moved for summary judgment on Crawford's disparate impact claim on the grounds that she had no evidence of a disparity, thereby putting Crawford's statistical analysis at issue.

[6] The provisions of the ADA are made applicable to federal employees through the Rehabilitation Act. See 29 U.S.C. § 791(g).

[7] Claims under the ADA are not listed in among the discrimination claims in 5 U.S.C. § 7703(b)(2) & (c) as requiring de novo review. We will, however, conduct a de novo review of the claims, as Crawford's arguments still fail.

disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees." Id. To be considered disabled under the ADA, an individual must have (1) a physical or mental impairment that substantially limits one or more major life activities; (2) have a record of such impairment; or (3) be regarded as having such an impairment. 42 U.S.C. § 12102(2).

Crawford contends that the OPM's finding of unsuitability was based on a perceived disability and points to documents that reference her psychological condition and ill health. Although she admits that she is not disabled, she maintains that the government regarded her as disabled. To be "regarded as" disabled under the ADA, Crawford must:

> (1) ha[ve] an impairment which is not substantially limiting but which the employer perceives as . . . substantially limiting . . . ; (2) ha[ve] an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) ha[ve] no impairment at all but is regarded by the employer as having a substantially limiting impairment.

Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 475 (5th Cir. 2006) (internal citation omitted).

The district court found that Crawford offered no competent summary judgment evidence to meet this standard. We agree. While there is some indication that the government was concerned with information regarding Crawford's previous behavior and mental state, this is not sufficient evidence to create a fact issue regarding discrimination based on disability. Believing an applicant is unsuitable or incapable of performing a particular job does not equate to labeling the employee as substantially impaired. See Ellison v. Software Spectrum, Inc., 85 F.3d 187, 192 (5th Cir. 1996). Further, for the reasons discussed earlier regarding Crawford's claims of race and gender discrimination, Crawford has failed to show that the government's legitimate and non-

17

discriminatory reasons for not hiring her were a pretext for disability discrimination or that discrimination was a motivating factor in the government's decision.

### b. *Disparate Impact*

Crawford also asserts that the government's use of background checks has a disparate impact on the disabled. However, Crawford again offers no valid statistical evidence or analysis regarding the effect of a background checks on the employment of disabled individuals. The district court found no genuine issue of material fact on this issue, and we affirm.

### c. *Reasonable Accommodation*

Crawford next claims that the government failed to make a reasonable accommodation for her disability. Under the ADA, an employer is liable for failing to accommodate qualified individuals with known physical or mental limitations, unless the employer can demonstrate that such accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). However, an employer is not required to accommodate an employee who it regards as disabled, but rather only those individuals who are *actually* limited and have requested an accommodation. See Gammage v. W. Jasper Sch. Bd. of Educ., 179 F.3d 952, 955 (5th Cir. 1999); Burch v. Coca-Cola Co., 119 F.3d 305, 314 (5th Cir. 1997). Here, Crawford admits that she is not disabled, and there is no evidence that she requested an accommodation. Consequently, the government was under no obligation to accommodate any "disability" and cannot be held liable for failing to do so. We therefore affirm the district court's decision to grant summary judgment on this claim.

## C. Motions to Amend Complaint

Crawford appeals the district court's decision to deny her first and third motions for leave

to amend her complaint.[8]  Review of the district court's denial of the motions for leave to amend complaint is for an abuse of discretion.  Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006).

Crawford makes a valid argument that she should have been allowed to amend her complaint once as a matter of course under the Federal Rules of Civil Procedure.  Rule 15(a) states:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.

Although the government had filed a motion to dismiss at the time Crawford first sought to amend her complaint, it had not filed an answer.  Our precedent is clear that a motion to dismiss is not considered a "responsive pleading" that would cut off the right to amend a pleading as a matter of course.  McKinney v. Irving Indep. Sch. Dist., 309 F.3d 308, 315 (5th Cir. 2002).  Since the government  had not filed an answer to Crawford's original complaint at the time Crawford filed her motion for leave to amend, Crawford could amend her complaint once as matter of course.  See FED. R. CIV. P. 15(a).

Our analysis of this issue does not end here, however.  The government argues that even if the motions to amend were denied improperly, the error was harmless.  We agree.  In her two motions to amend, Crawford sought to add Michael Chertoff (Secretary of the DHS), Johnson

---

[8] Crawford asserts that she filed a "second" motion for leave to amend her complaint.  The docket sheet, however, does not reflect that any such motion was filed.  A motion not filed is not part of the record on appeal and may not be considered on its merits.  See GHR Energy Corp. v. Crispin Co. (In re GHR Energy Corp.), 791 F.2d 1200, 1201-02 (5th Cir. 1986) (per curiam) ("[T]his court is barred from considering filings outside the record on appeal, and attachments to briefs do not suffice.").  Therefore, we will only consider her first and third motions.

(DHS Hiring Director), the Department of Justice, Alberto Gonzales (United States Attorney

General), the OPM, and Linda Springer (Director of the OPM) as defendants. She also sought to

include four new claims for relief: "buy and sale of an office," "deception/fraud," antitrust, and

unlawful seizures and surveillance. Crawford has not explained why these claims are not

precluded by the CSRA or subject to the administrative exhaustion requirements of the FTCA.

Indeed, the claims, as described in her amended complaints, are vague, unclear, and conclusory.[9]

Therefore, as Crawford's addition of these new defendants and claims by way of her amended

complaints would have been futile, the district court did not commit reversible error in denying

Crawford leave to amend.

## D.    Discovery  Issues

Crawford next takes issue with several rulings by the district court on discovery matters.

Rulings on discovery are reviewed for an abuse of discretion and will be affirmed unless the

decisions were arbitrary or clearly unreasonable. Moore v. Willis Indep. Sch. Dist, 233 F.3d 871,

876 (5th Cir. 2000).

First, Crawford appeals the district court's denial of her motion to "streamline" discovery

by allowing depositions upon written questions to be taken without an officer. Rule 31 of the

Federal Rules of Civil Procedure clearly states that an officer is to take responses and prepare the

---

[9] For example, in Crawford's third amended complaint, her antitrust allegation states:

> In addition to the anticompetitive acts set forth in the whistleblowing claims above, the use of businesses to carry forth an investigation that had already been completed, or other acts of harassment are pernicious, malicious, and predatory acts that restrain trade from state to state, nation to nation, and office to office . . . . The petitioner was economically intimidated and oppressed, and competitors enjoyed an unlawful advantage over her.

No further description of her antitrust claim is given.

record of depositions upon written questions. FED. R. CIV. P. 31(b). Although Rule 29 may allow parties to waive this requirement by agreement, there is no evidence such an agreement was made. Consequently, the district court did not abuse its discretion in denying this motion.[10]

Second, Crawford argues that a number of the government's responses to her discovery requests were insufficient and that the district court erred in not compelling further discovery from the government. Crawford, however, does not show that the district court abused its discretion in any way and her arguments on this point are somewhat unclear. Looking at Crawford's motion to compel and the district court's order, it appears that the district court reasonably limited the government's responses to Crawford's broad discovery requests. Therefore, we affirm the district court's rulings on discovery.

### E.  Motions to Recuse

Crawford also appeals the district court's orders denying her motions to recuse the magistrate judge and the district judge's law clerk. The denial of a motion to recuse is reviewed under an abuse of discretion standard. Matassarin v. Lynch, 174 F.3d 549, 571 (5th Cir. 1999).

Crawford requested that the magistrate judge recuse himself in this case because he had ruled against her in previous litigation. The district court denied her motion under 28 U.S.C. §§ 144 and 455, stating that Crawford's allegations of bias and partiality were conclusory and speculative. Crawford's allegations fare no better on appeal. In order for a judge to be disqualified for bias or prejudice, the bias must stem from an extrajudicial source and result in an opinion on some basis other than what the judge learned in the case. United States v. Grinnell

_____

[10] Crawford also makes some mention of judicial estoppel here, but we see no evidence that the government has taken inconsistent legal positions on this issue.

Corp., 384 U.S. 563, 583 (1966); United States v. MMR Corp., 954 F.2d 1040, 1045 (5th Cir. 1992). Recusal is warranted when a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality. See Chitimacha Tribe of La. v. Harry L. Laws Co., 690 F.2d 1157, 1167 (5th Cir. 1982). Here, there is no evidence beyond Crawford's pure speculation that the magistrate judge was prejudiced by his involvement in prior proceedings with Crawford. See Liteky v. United States, 510 U.S. 540, 555 (1994) (noting that judicial rulings alone are almost never a valid basis for recusal). A reasonable person would not harbor doubts about the magistrate judge's impartiality, so we affirm the decision to deny Crawford's motion to recuse.

Similarly, Crawford's motion to recuse the district judge's law clerk is based on unsupported speculation. Crawford asserts that the law clerk previously litigated against Crawford when the law clerk was employed by the City of Dallas. As the district court stated, the facts of this case and Crawford's claim against the City of Dallas are unrelated, the law clerk had no first-hand knowledge of the facts of this case, and the final decisions in this case were made by the judge, not the law clerk. In so holding, the district court did not abuse its discretion, and therefore we affirm the denial of Crawford's motion to recuse the district judge's law clerk.

**F.      Sealing Documents**

Next, Crawford appeals several of the district court's orders denying various motions to seal numerous documents. We review the district court's rulings on sealing documents for an abuse of discretion. See S.E.C. v. Van Waeyenberghe, 990 F.2d 845, 848 (5th Cir. 1993). Looking at the district court's orders, it is clear that the district court considered Crawford's motions to seal on a document-by-document basis. We note that the district court sealed a large

22

number of the documents in this case at Crawford's request, but specifically refused to seal others that had no private or confidential information in them.[11] On appeal, Crawford has failed to show that the district court abused its discretion in this regard. Therefore, we affirm the decisions of the district court regarding Crawford's motions to seal.

**G.      Costs**

Finally, Crawford argues that the district court erred by including the cost of her deposition when taxing costs against her and by taxing costs prior to the outcome of this appeal. This court reviews a lower court's taxing of costs under an abuse of discretion standard and grants the lower court "'great latitude in this determination.'" Stearns Airport Equip. Co. v. FMC Corp., 170 F.3d 518, 536 (5th Cir. 1999) (quoting Fogleman v. ARAMCO, 920 F.2d 278, 285-86 (5th Cir. 1991)).

Pursuant to 28 U.S.C. § 1920(2), a court may tax the cost of a court reporter's fees for a stenographic transcript obtained for use in the case. Depositions are clearly included within the phrase "stenographic transcript." See Stearns, 170 F.3d at 536; United States v. Kolesar, 313 F.2d 835, 837-38 (5th Cir. 1963). Crawford argues that the cost of her deposition was unnecessary because she gave testimony at the MSPB hearing. Regardless of her testimony at the MSPB hearing, the government was allowed to depose Crawford concerning her allegations in this case, which, as discussed earlier, exceeded her claims at the MSPB hearing. Crawford also asserts that the transcripts were unreliable, but she has provided no evidence of this. Further, there was no reason to delay the taxing of costs. Consequently, the district court did not abuse its

_____

[11] For example, the district court refused to seal Crawford's certificate of interested persons, her motion to seal, and her motion for a temporary restraining order.

23

discretion in awarding costs in the amount of $499.75 to the government, and we affirm its judgment.

## III.  CONCLUSION

For the foregoing reasons, we find no reversible error in the decisions of the district court and so affirm the judgment against Crawford.

AFFIRMED.