# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-50247

United States Court of Appeals
Fifth Circuit

**FILED**
March 26, 2019

Lyle W. Cayce
Clerk

QUIANNA S. CANADA, Individually,

     Plaintiff - Appellant

v.

TEXAS MUTUAL INSURANCE COMPANY; STACY PARASTAR GONZALEZ, in her official capacity; MARSHA THIBODAUX, in her official capacity; KRISTEN KIRKPATRICK; EDWARD "ED" COATES; DEMETRIC "DE" LEVIAH; RYAN JOHNSON; LYNETTE CALDWELL,

     Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-148

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

For over two years, pro se plaintiff Quianna S. Canada has fought Texas Mutual Insurance Company's (TMIC) refusal to hire her. During the litigation, she amended her complaint seven times, repeatedly engaged in duplicative—and sometimes frivolous—motions practice, impugned the integrity and sought

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50247

the disqualification of the district court judge, tried to disqualify defense counsel, filed a frivolous interlocutory appeal, and at one point attempted to voluntarily dismiss her claim because she believes "the legal proceedings in the United States is racist, supports racism, [and] staffs racist[s]." This decision will bring her odyssey to an end.

Although Canada claims that TMIC's decision was motivated by racial animus and although she asserts an ever-evolving series of claims—against anyone with even a tangential connection to the circumstances at issue—the district court was correct that none of the claims should reach a jury. For the reasons explained below, we affirm the district court's grant of summary judgment.

## I.

## A.

Canada is a black woman. For 28 days between June 28, 2016, and August 8, 2016, she was temporarily assigned to TMIC by Evins Personnel Consultants to fill a vacant policy-support-clerk position. During her temporary assignment, Canada was required to report to work every day from 8:00 a.m. to 5:00 p.m., using a badge to enter the building. The system recorded that on 13 of the 28 days, Canada swiped the badge after 8:00 a.m.

While temporarily employed, Canada applied for three permanent positions at TMIC. The application centrally at issue here was for the position of permanent policy support clerk—essentially, the same job she was provisionally staffing. Canada applied for the support clerk position on June 29, her second day of work, after speaking with Marsha Thibodaux, the policy support supervisor and Canada's immediate supervisor.

On July 21, Thibodaux told Canada that TMIC had hired Ryan Johnson, a white man, for the support clerk position. It is unclear from the record

2

whether Thibodaux specifically mentioned Johnson's race to Canada when she told her the position had been filled. Regardless, that same day, without informing anyone at TMIC, Canada filed a complaint with the City of Austin's Equal Employment and Fair Housing Office.

On August 8, Canada met Johnson when he reported for his first day of work. During her lunch break, Canada requested to speak to a human resources employee concerning her applications. Edward Coates, a human resources staff member, met with Canada and listened to her concerns that she had been improperly passed over for the jobs. When Canada requested to speak with the individuals who reviewed her job applications, Coates refused.

Some time before 3:44 p.m. on that same day, Thibodaux contacted Kristen Kirkpatrick, a human resources senior administrative assistant, to request that Canada's temporary assignment to TMIC be ended because the position had been filled. Kirkpatrick then spoke by phone with an Evins representative, and at 3:44 p.m., Kirkpatrick emailed Evins confirming her request to end Canada's temporary assignment at the close of business.

Shortly before 4:00 p.m., Canada received an email from the Equal Employment and Fair Housing Office asking Canada to contact them to discuss her July 21 complaint. At 3:59 p.m., Canada left the building to call a staff member at the Equal Employment and Fair Housing Office. She spoke with the representative for approximately 25 minutes before reentering the building at 4:24 p.m. After reentering, Canada told Thibodaux for the first time that Canada believed she was being discriminated against in the hiring process and that she had filed a complaint with the Equal Employment and Fair Housing Office. Canada then finished her shift. On August 25, Canada received an email from TMIC rejecting her for the document clerk position.

No. 18-50247

## B.

On August 26, Canada filed a charge with the Equal Employment Opportunity Commission (EEOC), receiving her right to sue letter in December.[1] In January 2017, Canada filed a pro se petition and amended petition against TMIC and various TMIC employees in state court alleging racial discrimination in hiring practices and asserting claims under both federal civil rights statutes and state labor laws. TMIC removed the case to federal court, and it was assigned to District Judge Sam Sparks. Canada then filed a motion to remand to state court, followed by an amended motion to remand, both of which the district court denied. Canada also filed what she styled as third, fourth, fifth, sixth, and seventh amended complaints, each reasserting discrimination claims under federal and state law. She also moved to disqualify defense counsel.

In June 2017, Canada filed another motion to remand to state court and sought leave to file an eighth amended complaint to delete her federal claims. According to Canada, deleting her federal claims would leave only state-law claims over which the district court should decline to exercise supplemental jurisdiction. The district court denied the motion to remand and to file the eighth amended complaint on grounds that Canada was attempting to circumvent the court's jurisdiction and had already amended her complaint numerous times. In the same ruling, the court denied the motion to disqualify defense counsel and placed limits on Canada's discovery efforts considering the "volume" of interrogatories and requests for admission the defendants had already answered. The court did allow Canada to select 24 interrogatories to

---

[1] The record does not indicate—and the parties do not mention—what happened with Canada's complaint to Austin's Equal Employment and Fair Housing Office.

No. 18-50247

be answered from previously served discovery and to seek court action if the answers were wanting.

Four days later, Canada moved to disqualify Judge Sparks. She argued that he had a relationship with defense counsel's law firm, and had demonstrated bias against her by making condescending comments about her pro se status during a status conference and by ruling against her on numerous matters. The motion was referred to Senior District Judge David A. Ezra.

While the disqualification motion was pending, Canada filed a motion seeking reconsideration of the prior order denying remand and leave to amend her complaint. On July 31, 2017, Judge Ezra denied Canada's motion to disqualify Judge Sparks. On that same date, Judge Sparks denied Canada's motion to reconsider. Undeterred, Canada filed another motion to remand and for leave to amend and a motion for reconsideration of the prior denial, which the district court denied.

Canada immediately filed a petition for a writ of mandamus in this court challenging the district court's denial of her motion to file an eighth amended complaint, denial of her motion to remand, denial of her motions to disqualify Judge Sparks and opposing counsel, and, finally, the limits placed on her discovery. We denied the motion.

Because we refused to stay the district court proceedings while considering Canada's writ petition, those proceedings continued apace during the pendency of the appeal. Judge Sparks soon dismissed the remaining individual defendants for failure to state a claim. Three weeks later, Judge Sparks referred the case to a magistrate judge, who subsequently recommended that summary judgment be granted to TMIC, the sole remaining defendant. Canada objected to the magistrate's report and recommendation,

No. 18-50247

but the district court adopted it in full and issued judgment in favor of TMIC. This appeal shortly followed.

## II.

Canada first challenges the district court's grant of summary judgment to TMIC on her Title VII claims—specifically, her disparate-impact claim, her disparate-treatment claim, and her retaliation claim. We review a district court's decision to grant summary judgment de novo. *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 863 (5th Cir. 2018).

## A.

"Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). One of TMIC's chief defenses to Canada's Title VII claims is that Canada cannot show she was qualified for the positions she sought because Canada could not have passed a criminal background check. Although her briefing is confusing in places, the court understands Canada to be arguing that TMIC's use of background checks to exclude job candidates with certain criminal histories violates Title VII by disproportionately impacting black applicants.

Of Canada's disparate-impact claim, the district court said only that she had failed to provide any authority indicating that an employer may not use a background check to screen candidates. But Canada's argument is not that employers may *never* use background checks to screen candidates; it is instead that an employer's use of a background check policy that *disproportionately affects* black applicants violates Title VII. The fundamental problem with Canada's argument, however, is that she has offered no evidence that the TMIC policy disproportionately affects black applicants.

No. 18-50247

"To establish a prima facie case of discrimination under a disparate-impact theory, a plaintiff must show: (1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275 (5th Cir. 2008). Satisfying the second element typically requires establishing that the practice or policy had a statistically significant adverse impact on the protected class. *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002). "[T]he comparison must be made between the employer's work force and the pool of applicants." *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 379 (5th Cir. 2007). The only evidence Canada relies on to establish a disparate impact is her belief that any kind of background check disproportionately affects black individuals. She infers that TMIC's policy must be having an adverse impact on black applicants due to her claim (without support) that less than 9% of TMIC employees are black.

Even if the court were to accept at face value Canada's premise that background checks, generally, have a disproportionate impact on the black population, generally, her claim would still fail. Reliance on a policy's disparate impact on the general population, rather than on the applicant pool, is misplaced. *Crawford*, 245 F. App'x at 379. Among other things, to establish a disparate impact, Canada needed to show that the specific type of background-check policy TMIC uses to screen candidates disproportionately impacts black applicants who are otherwise qualified. She needed to establish a racial disparity between the employer's work force and the pool of applicants, and then tie that disparity to the use of background checks. *See id.* at 379–80. Canada has done neither. Her disparate-impact claim fails.

No. 18-50247

## B.

To establish a prima facie case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis. Under *McDonnell Douglas*, the plaintiff carries the burden to prove that (1) she belongs to a protected class; (2) she applied for and was qualified for the position; (3) she was rejected despite being qualified; and (4) others similarly qualified but outside the protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802*; see also Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019). Next, the burden shifts to the employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). Finally, the burden shifts back "to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.*

The district court held that Canada could not prevail on her disparate treatment claim because she cannot show that she was qualified for a position at TMIC. The court ruled that both her chronic tardiness and her criminal history precluded Canada from obtaining the positions. Because we agree that Canada's lack of punctuality negated her eligibility for the positions, we do not address whether TMIC's after-acquired evidence that Canada could not pass a background check insulates its decision not to hire her.

### 1.

Canada first argues that the district court erred by analyzing her claim only under the *McDonnell Douglas* framework because she also introduced "direct evidence" of discrimination. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or

presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). In her deposition and in a sworn declaration filed in response to TMIC's summary judgment motion, Canada identified several statements by TMIC employees that she believes qualify as direct evidence. But neither the statements she relies on nor the direct-evidence theory itself are mentioned in any of Canada's complaints, including her lengthy seventh amended complaint. In fact, the complaint specifically frames her disparate-treatment claim under the *McDonnell Douglas* framework. Similarly, in her response to the EEOC's request for information regarding the substance of her claim, Canada did not mention either the alleged statements or the direct-evidence theory; instead she explained her belief that she can satisfy the *McDonnell Douglas* standard.

We agree with TMIC that Canada has waived her right to argue under the direct-evidence framework. She did not identify any direct evidence or mention a direct-evidence theory in either her EEOC charge or her complaint. She did not mention direct evidence in her opposition to the defendant's summary-judgment motion. Her objections to the magistrate's report and recommendations mention direct evidence only in passing. Although we liberally construe briefs of pro se litigants, arguments not raised before the district court are waived. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and cannot be raised."). The direct-evidence argument is waived.

**2.**

Turning now to the *McDonnell Douglas* framework, we also agree with the district court that Canada was unqualified for the positions she sought. TMIC introduced evidence that Canada was repeatedly tardy during her temporary assignment, in contravention of a written employment policy.

Although Canada now attempts to backtrack from her complaint's acknowledgement that she was late for work on multiple occasions, she has not created a genuine fact dispute regarding her general tardiness for work during her short employment at TMIC. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that a genuine dispute of material fact means that "evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Canada's speculation about the accuracy of the badge system does not create a genuine factual issue. *See Likens v. Hartford Life & Acc. Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012) ("[A] non-movant . . . cannot defeat summary judgment with speculation, improbable inferences, or unsubstantiated assertions." (citations omitted)). Because she cannot show that she was otherwise qualified for the positions she applied for, Canada could not make the required prima facie showing under *McDonnell Douglas*. Summary judgment on her disparate-treatment claim was therefore appropriate.

## C.

Canada's retaliation claim likewise fails. "Making a prima facie case for a retaliation claim requires the plaintiff to demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (quotations omitted). If the plaintiff establishes her prima facie case, the *McDonnell Douglas* burden-shifting framework applies. *Id.*

Canada claims that adverse employment action was taken in response to her complaint to the Equal Employment and Fair Housing Office on July 21 and her complaint to Coates on August 8. To satisfy the causation element of her claim, she needed to prove that her complaints were the but-for cause of

her termination. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The crucial problem with her argument is that Kristen Kirkpatrick, the human resources senior administrative assistant who ended Canada's assignment to TMIC, was not aware of Canada's discrimination complaints until *after* the decision not to retain her had been made. Accordingly, the complaints could not have played a role in the decision. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").[2]

Canada also relies on a "cat's paw" theory of causation to prove her retaliation claim. "Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus." *Zamora v. City Of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). Canada's theory is that even if Kirkpatrick did not intentionally discriminate against her, Kirkpatrick was simply a "cat's paw" of Thibodaux and Coates. She suggests that Kirkpatrick would not have terminated her but for the malicious, untrue information that Thibodaux and Coates provided to Kirkpatrick.

To invoke the cat's paw analysis, Canada must establish "(1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quotations omitted). But Thibodaux did not learn of Canada's discrimination complaints until after Kirkpatrick made her decision. And although Canada's meeting

---

[2] Canada fails to brief her rejection for the document clerk position, so any retaliation arguments with respect to that position are waived.

No. 18-50247

with Coates occurred several hours before Kirkpatrick's decision, Canada offers no evidence that Kirkpatrick and Coates communicated at all during the intervening period or that Coates had influence over Kirkpatrick. *See Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*, 643 F. App'x 454, 457 (5th Cir. 2016) (per curiam) (affirming summary judgment on a retaliation claim where the employee failed to show the discriminating employer "had influence over" the decisionmakers). As such, the district court correctly granted summary judgment on her retaliation claim.

## III.

Canada also challenges the district court's dismissal of Thibodaux, arguing that she has stated a viable claim against Thibodaux for tortious interference with a prospective business relationship. But the threshold for establishing a tortious interference action is exceedingly difficult. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001). And where, as here, the claim is that an individual tortiously interfered with the prospective business relations of its own employer, the threshold is even more difficult. *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456–57 (Tex. 1998) (per curiam). In fact, unless the employer admits that the employee was acting against its interest, the burden is insurmountable. *Id.* at 457. Because TMIC has not conceded that Thibodaux was acting against its interest, Canada's claim fails.[3]

## IV.

Finally, Canada contends that the district court reversibly erred by denying her Rule 56(d) motion for leave to conduct additional discovery, as well as by refusing to allow Canada to amend her complaint for an eighth time.

---

[3] To the extent Canada intends to appeal her claim against Thibodaux under 42 U.S.C. § 1981, that claim fails for the same reasons Canada's Title VII claims fail. *See Wright v. Chevron Phillips Chem. Co., L.P.*, 734 F. App'x 931, 933 n.2 (5th Cir. 2018) (per curiam) ("The analysis under both Title VII and § 1981 is identical.").

No. 18-50247

We review a district court's denial of a Rule 56(d) motion for abuse of discretion. *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013). Although such motions are "broadly favored" and should be "liberally granted," Canada was not entitled to additional discovery as a matter of right. She was instead required to "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (quotations omitted). Canada was able to identify no *plausible* basis for believing that additional facts might change the outcome of the motion. She also failed to identify how any additional discovery could be resolved in a timely manner. Accordingly, given the volume of discovery that had already occurred, the district court did not abuse its discretion in denying her motion.

Regarding the district court's refusal to permit an eighth amended complaint, the district court concluded that Canada only sought leave to amend to eliminate her federal claims and circumvent federal jurisdiction. We have recognized once already in this litigation that the district court's decision was correct, *see In re: Quianna Canada*, No. 17 -50677, at 2–3 (5th Cir. Dec. 29, 2017), and we now do so for a second time.

\*          \*          \*

Discrimination in employment is an invidious practice. We encourage those who believe themselves harmed by such discrimination to vindicate their rights. Given the nature of her claim, Canada may be entitled to legitimate skepticism toward the defendants. But that skepticism does not justify her extraordinary claims of bias against defense counsel, the district judge specifically, and the federal judicial system in general. The court's

13

disagreement with Canada does not automatically impute prejudice. In our legal system, Canada is entitled only to a fair shake. She has received one.

AFFIRMED.