# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30762

LINDA SINGLETARY,

United States Court of Appeals
Fifth Circuit

**FILED**

July 6, 2016

Plaintiff - Appellant

Lyle W. Cayce
Clerk

v.

UNITED PARCEL SERVICE, INCORPORATED; PRUDENTIAL
INSURANCE COMPANY OF AMERICA; UNITED PARCEL SERVICE
FLEXIBLE BENEFITS PLAN,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Linda Singletary purchased life insurance for herself and her husband through her employer, United Parcel Service. Her husband, Timothy Singletary, was an active-duty soldier in the United States Army. He was killed in a weekend motorcycle accident while off base and not on duty. Prudential Insurance Company of America denied his widow's claim pursuant to an exclusion for active-duty servicemen. Mrs. Singletary brought suit, claiming she had no notice of the exclusion and that the exclusion is otherwise unenforceable. The district court granted summary judgment for Prudential and UPS.

We AFFIRM.

No. 15-30762

FACTS AND PROCEDURAL BACKGROUND

Linda Singletary worked for United Parcel Service and participated in the UPS Flexible Benefits Plan (the "Plan"), which provides group life insurance coverage to UPS employees. The carrier of the Plan is Prudential Life Insurance Company of America. Under the Plan, Mrs. Singletary could purchase supplemental dependent life insurance for her "Qualified Dependents." On August 22, 2012, she purchased $500,000 in dependent insurance for her husband, Timothy Singletary. Under the Plan, however, a "spouse [or] Domestic Partner . . . is not [a] Qualified Dependent while . . . on active duty in the armed forces of any country."

Timothy Singletary was an active-duty soldier, stationed at Fort Hood in Texas. He had the rank of Specialist in the United States Army. On October 21, 2012, Specialist Singletary was killed in a motorcycle accident in Texas. After his death, Mrs. Singletary submitted a life insurance claim for benefits. Prudential investigated her claim. It reviewed the Army Report of Casualty, which indicated that Specialist Singletary was not on duty at the time of his death. Prudential contacted the Army to confirm that the deceased had been an active-duty soldier. The Army confirmed, explaining the "off duty" notation on the Report of Casualty meant only that Specialist Singletary was not on duty at the time of his accident. Prudential then denied the claim because the deceased was on active duty at the time of his death.

Mrs. Singletary twice appealed to Prudential, making two principal arguments. First, she argued the active-duty exclusion was not disclosed to her. She claimed that the only document she received was a Summary Plan Description ("SPD"). The SPD did not list the relevant exclusion. Other documents that did contain the exclusion, such as an "Enrollment Kit" and "Certificate of Coverage," were not sent to her. Second, she argued the exclusion is otherwise unenforceable because it is contrary to Louisiana law.

2

No. 15-30762

Prudential denied both appeals.  She then filed the present suit in federal court, seeking to recover benefits allegedly due to her under the Employee Retirement Income Security Act ("ERISA").  *See* 29 U.S.C. § 1132(a)(1)(B).  She also advanced state law claims.  The district court granted summary judgment to UPS and Prudential, holding that Prudential correctly denied the claim pursuant to the exclusion and the exclusion was enforceable.  This timely appeal was then filed.

## DISCUSSION

We review the district court's summary judgment ruling *de novo*, "applying the same standard as the district court." *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).  We address the ERISA claim before turning to the state-law claims.

### I.    *Overview of ERISA*

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).  When reviewing a denial of benefits made by an ERISA plan administrator, the court applies a *de novo* standard of review, "unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan confers this discretionary authority on the administrator, we review the exercise of the authority for abuse of discretion. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009).  Here, all parties agree that the plan vests discretionary authority with the administrator.  Hence, our review is for abuse of discretion.

No. 15-30762

We generally evaluate an administrator's decision in a two-step analysis. *See Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004). First, we must determine whether the administrator's interpretation was legally correct. *Id.* at 629–30. If so, our inquiry ends. *Id.* If not, we must determine whether the administrator's interpretation was an abuse of discretion. *Id.* at 630. "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland*, 576 F.3d at 246 (quotation marks omitted). Moreover, "[i]f the . . . decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007). Ultimately, "our review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end." *Id.* at 398.

Here, Prudential correctly interpreted the exclusion as barring the claim. The Plan indicates that a spouse is not a qualified dependent when the spouse is on active-duty in the armed forces of any country. Moreover, it was not an abuse of discretion for Prudential to interpret the exclusion to apply regardless of whether a spouse was on military duty at the time of an occurrence. The only evidence was that Specialist Singletary was an active-duty soldier, which is a continuous status, 24/7/365, during the period of enlistment. Benefits are not owed because he was not a qualified dependent.

Mrs. Singletary argues that Prudential abused its discretion by enforcing an exclusion of which she was not on notice. She claims that the only document she received was the Summary Plan Description. Prudential admitted in the administrative proceedings below that the SPD did not mention the exclusion. Even so, under ERISA, the claim Mrs. Singletary has

4

brought requires us simply to interpret the Plan. Because the Plan does not allow benefits for a spouse who was on active military duty, the claim fails.

As all who wrestle with it know, ERISA is complicated. It has at least six civil enforcement provisions. *See* 29 U.S.C. § 1132(a)(1)−(6); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990). Mrs. Singletary brought her claim under the one that states a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). This present claim cannot arise *under the terms of the Plan* because coverage for a beneficiary who is an active-duty soldier does not exist in the Plan.

One of our sister circuits discussed a related situation in which, for reasons that arguably were unfair, coverage did not exist. *See Strom v. Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999), *abrogated on other grounds by Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). There, the plan administrator had not timely processed an application for coverage; the beneficiary died before the increased coverage had become effective. *Id.* at 141−42. Strom's widow filed suit using the same cause of action as has Mrs. Singletary, namely, Section 1132(a)(1)(B). The Second Circuit upheld the denial of the claim, holding that this cause of action "only authorizes the recovery of benefits due under the terms of a plan, and, as a result of the defendant's error, Strom never qualified for supplemental life insurance." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 583 (2d Cir. 2006) (discussing the holding in *Strom*).

Importantly, to succeed under Section 1132(a)(1)(B), the claimant must show that he or she "qualif[ies] for the benefits provided in that plan." *Id.* For this cause of action, courts do not look for equitable or other reasons the insurer should provide benefits not strictly owed under the Plan. That is not to say ERISA has no door through which such claims can proceed, but Section

1132(a)(1)(B) is not open to such a claim. We will later discuss two possibly relevant causes of action under ERISA.

In the present case, the Plan states that the beneficiary, Mrs. Singletary, is "eligible to become [an] insured for Dependents Insurance while" she has "a Qualified Dependent." A "Qualified Dependent" is defined to be, among other things, a "spouse." A spouse, though, "is not [a] Qualified Dependent while on active duty in the armed forces of any country . . . ." Thus, Section 1132(a)(1)(B) would provide relief had Prudential failed to follow the terms of the Plan, but it does not provide relief from a proper application of those terms.

Mrs. Singletary is not seeking to enforce the Plan. She instead is seeking relief from the provisions of the Plan because of lack of notice of something that she does not dispute is actually in the Plan. She argues that the SPD's failure to disclose this exclusion violated ERISA, and therefore, Prudential should be estopped from relying on the exclusion. ERISA requires that an insurer's SPD list "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits . . . ." 29 U.S.C. § 1022(b).

An equitable claim such as this one can be brought, but "failure to comply with ERISA's SPD requirements cannot be the basis for a [Section 1132](a)(1)(B) benefit claim." 1 LEE T. POLK, ERISA PRACTICE AND LITIGATION § 3:23 (2016). Two other sections, though, are possible bases for the claim. ERISA provides that "a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable" for damages resulting from the breach. 29 U.S.C. § 1109(a). On appeal, Mrs. Singletary argues she received no notice of the active-duty exclusion, which would mean that the Plan Administrator failed to comply with the obligation to send her a compliant SPD. Sending a proper SPD is statutorily identified as a duty: in an ERISA section entitled "Duty of disclosure and reporting," the first obligation listed is to send the SPD

with the necessary disclosures to participants and beneficiaries. 29 U.S.C. § 1021(a)(1).[1] Liability for such breaches, the Supreme Court has pointed out, may be imposed under Section "1132(a)(2) – the second of ERISA's 'six carefully integrated civil enforcement provisions,' . . . – [which] allows the Secretary of Labor or any plan beneficiary, participant, or fiduciary to bring a civil action 'for appropriate relief under section'" 1109. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252−53 (1993) (citation omitted).

Another provision, Section 1132(a)(3), is also a possibility for this claim. It provides that a participant or beneficiary of a plan may "obtain other appropriate equitable relief" as a result of "any act or practice which violates any provision of this subchapter or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3); *see CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011). Because it violates an ERISA provision for a Plan Administrator not to provide a valid SPD to a beneficiary or participant, and because the provision creating the duty, Section 1021(a), is in the same ERISA subchapter as Section 1132(a)(3),[2] it may be that a claim for failure to disclose the exclusion could also have been brought under subsection (a)(3). Bringing a claim under subsection (a)(3) for an omission from an SPD seeks to "estop application of the plan provision under a court's authority to provide 'appropriate equitable relief.'" STEPHEN R. BRUCE, PENSION CLAIMS: RIGHTS AND OBLIGATIONS 397−98 (2d ed. 1993). An incomplete SPD violates "Section 102 of ERISA and [is] also a fiduciary violation." *Id.* at 398.

The Eighth Circuit has stressed the difference between bringing a claim for benefits under a plan and bringing a claim for equitable relief:

---

[1] The "plan administrator's duty of . . . disclosing information to participants . . . [is] located in subparts D, E and F"; subpart F deals with SPDs. 29 C.F.R. § 2520.101-1.

[2] Section 1132 is in Chapter 18, Subchapter I, Part 5, while Section 1021 is in Part 1.

Although his ultimate goal is to continue receiving disability income benefits . . . section [1132](a)(1)(B) authorizes a participant to bring an action to recover benefits . . . *under the terms of the plan.* Ross is not seeking to obtain benefits under the terms of the Plan. Rather, he is seeking to reform the Plan by obtaining a declaration that the purported [Plan provisions] are void. Section [1132](a)(1)(B) does not authorize such a claim.

*Ross v. Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 740 (8th Cir. 2002).[3]

Finally, the Supreme Court has indicated that inadequate notice claims are equitable claims appropriate for resolution when a claim is brought under Section 1132(a)(3). *See Amara*, 563 U.S. 421. That case dealt with changes to CIGNA's basic pension plan. *Id*. at 424. CIGNA failed to notify its employees of the alterations. *Id*. When the employees sued, the district court reformed the plan to remove the changes. *Id*. at 435. As basis for its authority to reform the plan, the district court cited Section 1132(a)(1)(B), the same provision employed in this case. *Id*. The Supreme Court disagreed, stating that a court has no authority under that section "to *change* the terms of the plan as they previously existed," but it only allows enforcing a plan's provisions. *Id*. at 435−36. In what a concurring opinion labels "dicta," the Court went on to say that appropriate equitable relief was likely available under Section 1132(a)(3). *Id*. at 438−42, 446−50 (Scalia, J., concurring).

Applying these holdings, we conclude that Mrs. Singletary's claim that Prudential should be estopped because it gave her no notice is not cognizable under her pled cause of action. Further, we should not transform a Section 1132(a)(1)(B) suit into a Section 1132(a)(2) or (a)(3) suit. "ERISA . . . expressly authorizes several claims for relief. Several procedural, as well as substantive,

---

[3] In *Strom*, the Second Circuit also eventually offered "'equitable relief' within the meaning of Section [1132](a)(3)(B)." 202 F.3d at 150.

aspects of the litigation vary according to the specific claim alleged in the complaint . . . . Following the lead of the Supreme Court . . . courts now look closely at the particular § 502(a) claim for relief being alleged.  Courts are extremely reluctant to improvise or alter these forms of action." Ronald Dean, *ERISA Claims for Relief*, SN021 ALI-ABA 225, 227 (2008).

We need not resolve whether subsection (a)(2) or (a)(3) is the better fit. The claim could have been brought by referring to both sections. The problem here is that the only source for the claim used by the plaintiff was the inapplicable Section 1132(a)(1)(B).

It also is important to examine everything that occurred in district court addressing the basis of this claim.  We start with the point we have been discussing, namely, that the complaint sought to enforce the Plan and not seek equitable relief from it.  That focus is shown not only from the citing of only one of the civil enforcement provisions on which to base her claim, but also in the manner in which she articulated the reasons she was entitled to relief.

Count I of the initial complaint[4] states that

> Mrs. Singletary submitted substantial evidence establishing that although Mr. Singletary was a member of the armed services . . . at the time of his death, he was stationed stateside and was "off duty" . . . .  Mr. Singletary, as a result, was a qualified dependent of Mrs. Singletary under the terms and conditions of the Plan. Mrs. Singletary, accordingly, is entitled to an award of . . . life insurance benefits due as a result of the death of her spouse under the terms of the Plan.  29 U.S.C. § 1132(a)(1)(B).

Thus, Mrs. Singletary's argument in the district court was that she was entitled to benefits under the "terms of the Plan" because her husband was not on active duty, making the exclusion inapplicable.

---

[4] The first amended complaint did not alter the ERISA claim.

In no district court filing was there a reference to 29 U.S.C. § 1022(a), the provision outlining what SPDs must contain. In fact, the only mention of "SPD" or "Summary Plan Description" in any document filed by Mrs. Singletary in the district court was in her Memorandum in Opposition to Motions for Summary Judgment. There, she wrote "that the SPD was *silent* as to the military status policy exclusion." This reference, though, was in the section dealing with Louisiana law. As she argued, under Louisiana law, the insurer must show that the "certificate of insurance was delivered or that the insured otherwise had notice." Thus, Mrs. Singletary's mention of the SPD omission was in the context of whether she "otherwise had notice" for purposes of Louisiana law. In summary, Mrs. Singletary's ERISA argument in the district court was only that she was entitled to benefits under the plan. It was not until her brief in the current appeal that she based the unenforceability of the exclusion on an SPD violation. That is too late. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

## II.    *State law*

Mrs. Singletary makes two arguments that under Louisiana law the exclusion is unenforceable. Her first is that UPS or Prudential was required to deliver to her a certificate of coverage because of the following statute:

> Certificates. *A provision that the insurer will issue to the policyholder for delivery to the employee*, or member, whose life is insured under such policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled.

LA. STAT. ANN § 22:942(7). Her second is that an insurance exclusion based purely on military status is illegal. A Louisiana statute provides that:

> No policy of group life insurance . . . in this state shall contain any provision which excludes . . . liability for death . . . while the insured has a specified status, except the following . . . :

No. 15-30762

> (1) As a result of war declared or undeclared under conditions specified in the policy.
>
> (2) While in the military, naval, or air forces of any country at war, declared or undeclared; or in any ambulance, medical, hospital, or civilian noncombatant unit serving with such forces, either while serving with or within six months after termination of service in such forces or units.

*Id.* § 22:943(A)(1)–(2). We do not address whether Louisiana law offers her relief, however, because we determine that state's law does not apply.

The Plan states that it is governed by Georgia law. "We have not previously addressed how we should decide residual choice of law disputes in the ERISA context. However, we have held that we should apply federal common law choice of law principles when we exercise federal question jurisdiction over a case." *Jimenez v. Sun Life Assurance. Co. of Canada*, 486 F. App'x 398, 406 (5th Cir. 2012). At issue in *Jimenez* was whether Texas or Louisiana law applied to the extent that ERISA did not preempt both. *Id.* at 405. The plaintiff, Jimenez, advocated for Louisiana law, but the Plan specified Texas law. *Id.* at 407. We noted that under federal common law, there are "three possible approaches to resolving this choice of law issue," but that we did not need to "decide among these competing standards . . . because . . . Jimenez . . . failed to satisfy his burden to establish that we should not enforce the Policy's choice of law clause under any standard . . . ." *Id.* at 408.

The same is true in this case. Here, Mrs. Singletary's only argument for why Louisiana law should apply is that "Louisiana has a strong interest in its citizen insureds receiving requisite written notice," and that because the defendants have chosen to insure Louisiana citizens, they should be subject to its laws. This very public policy argument was rejected in *Jimenez*. There, Jimenez argued that a particular section of Louisiana law was the "public policy of the State of Louisiana and is mandatory to all insurance policies

11

which apply to insureds who reside in Louisiana." *Id*. at 406. We held this concern insufficient "to void the Policy's choice of law provision." *Id*. at 408. Moreover, unlike in *Jimenez* where the accident actually occurred in Louisiana involving Louisiana citizens, here the accident occurred in Texas.[5] *See id*. Hence, Mrs. Singletary has not provided sufficient argument that the forum selection clause in the Plan should be void.

Mrs. Singletary argues that she should still prevail under Georgia law. She points out that Georgia law has a similar provision requiring that the insurer "show that the certificate of insurance was delivered or that the insured otherwise had notice and therefore assented to the terms of the master policy excluding coverage for pre-existing conditions." *Investor's Nat'l Life Ins. Co. v. Norsworthy*, 287 S.E.2d 66, 67–68 (Ga. App. 1981); GA. CODE § 33-27-3(a)(7). We hold that this provision of Georgia law is preempted by ERISA.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA's preemptive scope is expansive and limited only by the savings clause. *Id*. § 1144(b)(2)(A). Here, Mrs. Singletary acknowledges that her "employee welfare benefit plan [is] governed by the Employee Retirement Income Security Act." Given that she is relying on Section 33-27-3(a)(7) to strike a provision of a plan governed by ERISA, Section 33-27-3(a)(7) relates to her employee benefit plan. *See Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 98 (1983).

Since ERISA preemption applies to Section 33-27-3(a)(7), the statute is saved only if it is: (1) "directed toward entities engaged in insurance"; and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329,

---

[5] Although Mrs. Singletary's complaint states that she is a "resident of the Parish of Jefferson, State of Louisiana," there is no information in the record about whether Specialist Singletary or the other persons involved in the motorcycle accident were Louisiana residents.

341−42 (2003).    Section 33-27-3(a)(7) may be directed towards insurance entities, but it does not substantially affect the risk pooling agreement between insurers and the insureds.    Section 33-27-3(a)(7) simply requires a certificate be sent from an insurer (Prudential) to a policyholder (UPS) to the insured (Singletary).    It does not affect the risk pooling agreement at all.    Therefore, Section 33-27-3(a)(7) is not saved from preemption.

AFFIRMED.