# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30835

United States Court of Appeals
Fifth Circuit

**FILED**
October 1, 2018

Lyle W. Cayce
Clerk

MICHAEL N. MANUEL,

> Plaintiff - Appellant

v.

TURNER INDUSTRIES GROUP, L.L.C.; THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,

> Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before SMITH, CLEMENT, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Today we must delve into "the labyrinthine complexities of ERISA law and practice." *Foltz v. U.S. News & World Report*, 760 F.2d 1300, 1308 (D.C. Cir. 1985). The district court struggled with several important provisions. For the following reasons we REVERSE and REMAND in part, AFFIRM in part, and VACATE in part.

## FACTS AND PROCEEDINGS

Michael N. Manuel is a former employee of Turner Industries Group LLC ("Turner"). During his employment, Manuel participated in a group employee

No. 17-30835

short term and long term disability plan (the "plan") sponsored by Turner and insured by Prudential Insurance Company of America ("Prudential").

The plan provides that benefits are payable when "Prudential determines that" a participant is unable to work. The plan also provides that participants must submit proof of disability "satisfactory to Prudential." The summary plan description ("SPD") adds that Prudential "has the sole discretion to interpret" the plan.

The plan "does not cover a disability which . . . is due to a pre-existing condition." As to short term disability ("STD") benefits, "Prudential has the right to recover any overpayments due to . . . any error Prudential makes in processing a claim."

Manuel alleges he became unable to work and claimed STD benefits under the plan. His STD claim was approved and paid.

Once he exhausted these benefits, he applied for long term disability ("LTD"). His LTD claim was denied at every level of internal adjudication because Prudential concluded that Manuel's claim was subject to the pre-existing condition exclusion. Related to the denial, but before any suit was filed, Prudential determined that it had paid STD benefits in error and demanded repayment.

Naturally, to better understand his rights, Manuel requested plan documents from Turner—his employer and the plan administrator. Turner responded by providing an SPD and a Group Insurance Certificate. Manuel followed up by requesting additional documents, and Turner provided the Group Insurance Contract.

Following the administrative denial of his claims, Manuel sued Turner and Prudential for a myriad of alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and state law. Prudential counterclaimed, seeking repayment of the STD benefits it allegedly paid in

error. The district court rejected all of Manuel's claims upon motion to dismiss or for summary judgment. It granted summary judgment to Prudential on its repayment counterclaim.[1] Manuel appeals some but not all of the district court's rulings.

## STANDARD OF REVIEW

This court "review[s] a district court's decision to grant summary judgment *de novo*." *Ramsey v. Henderson*, 286 F.3d 264, 267 (5th Cir. 2002). And it "review[s] *de novo* dismissals under Rule 12(b)(6)." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## DISCUSSION

### I.    Fiduciary Breach

Manuel argues that (1) Prudential and Turner breached their fiduciary duties to him because they maintained a deficient document—the SPD—and (2) Prudential violated ERISA's claims administration requirements by (a) asserting new grounds for denial of his LTD benefits at the last level of appeal and (b) failing to identify the independent medical reviewer who recommended denying Manuel's claims on appeal. The district court dismissed these claims because it concluded that Manuel had raised his complaints under the wrong provision of ERISA—for breach of fiduciary duty under ERISA § 502(a)(3) rather than for plan benefits under ERISA § 502(a)(1)(B). The district court concluded that the document deficiency claim could have been brought only against Turner.

Manuel argues that all of these claims were brought under the correct provision of ERISA and that both defendants were properly subject to suit. It is easiest to analyze each of the alleged breaches in turn (*i.e.*, consider Manuel's claim for document failures as to both defendants and then consider his

---

[1] It also granted Prudential's request for prejudgment interest.

contentions about Prudential's claims administration procedures). But first it is helpful to lay out ERISA's principles and the district court's general misconstruction of them.

*A. ERISA and the District Court's Error*

The district court dismissed Manuel's claims for breach of fiduciary duty against Prudential for two reasons. First, it concluded that circumstances in which an ERISA § 502(a)(3) and an ERISA § 502(a)(1)(B) action may be maintained simultaneously represent a "rare exception." Applying its "rare exception" gloss on Fifth Circuit and Supreme Court precedent, it dismissed at least some of Manuel's claims under ERISA § 502(a)(3) because they were duplicative of claims available under ERISA § 502(a)(1)(B). Second, the district court concluded that Turner, as Manuel's employer, was the plan administrator and was solely "responsible for any defects in the plan." For this reason, it concluded that Prudential was not responsible for at least some of the alleged ERISA § 502(a)(3) violations because "Prudential could not have breached any fiduciary duty pursuant to ERISA § 502(a)(3) when no fiduciary duty was owed."

The relationship between these two grounds for dismissal is unclear, as the district court seems to suggest that the first ground applies to one set of Manuel's ERISA § 502(a)(3) claims and the second ground applies to his "remaining [ERISA] § 502(a)(3) claim." But the discussion of each ground for dismissal identifies the same set of claims—the document deficiency issues. The district court's opinion does not address Manuel's other ERISA § 502(a)(3) claims against Prudential, which include allegations of procedural irregularity at the claims administrative level. Complicating matters even further, in disposing of the claims against Turner, the district court merely adopted the "reasons set forth in the Court's Ruling on Prudential's *Motion to Dismiss*."

4

No. 17-30835

As Manuel correctly points out, if some or all of his ERISA § 502(a)(3) claims can be dismissed only with respect to Prudential because Turner and not Prudential is the plan administrator, the same justification cannot be used to dispose of those same claims as they were made against Turner. The district court tacitly acknowledged this in response to Manuel's motion for reconsideration/new trial, noting that it "dismissed *all* of [Manuel's ERISA §] 502(a)(3) claims against Prudential" because they were duplicative of his ERISA § 502(a)(1)(B) claim for plan benefits.

But the Supreme Court has construed ERISA § 502(a)(1)(B) narrowly, pointing out that its plain language focuses on the ERISA "plan" itself. *See, e.g.*, *CIGNA Corp. v. Amara*, 563 U.S. 421, 435–36 (2011). An ERISA plan is best thought of as a "written instrument" which includes the "basic terms and conditions" governing a set of benefits offered by an employer. *Id.* at 437. Claims under ERISA § 502(a)(1)(B) are generally limited to actions "respect[ing] . . . the interpretation of plan documents and the payment of claims." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

But ERISA includes numerous requirements beyond the mere payment of benefits in accord with a plan's written terms. *See e.g., Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983) (noting that, among other things, ERISA "sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility"). ERISA § 502(a)(3), which sounds in equity, creates a broad cause of action for certain injuries that result from some of these other ERISA violations. *Varity*, 516 U.S. at 512 (describing ERISA § 502(a)(3) as a "catchall"). Generally, an ERISA § 502(a)(3) claim for equitable relief may not be maintained when ERISA § 502(a)(1)(B) "affords an adequate remedy." *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 526 (5th Cir. 2000); *see also Varity* 516 U.S. at 512 (noting that

5

ERISA § 502(a)(3) offers "appropriate equitable relief for injuries caused by violations that [ERISA] § 502 does not elsewhere adequately remedy").

"[A] claimant whose *injury* creates a cause of action under [ERISA § 502(a)(1)(B)] may not proceed with a claim under [ERISA § 502(a)(3)]." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 733 (5th Cir. 2018) (emphasis added) (citation omitted). By looking at the underlying alleged injury, it is possible to determine whether a given claim is duplicative of a claim that could have been brought under ERISA § 502(a)(1)(B). So, for example, in *Innova* this court held, while dismissing a claim under ERISA § 502(a)(3), that the plaintiff had "an adequate mechanism for redress under" ERISA § 502(a)(1)(B) for "fail[ure] to reimburse [the plaintiff] under the terms of [the] plan[]." *Id.* at 733–34.

*B. Document Deficiency Issues*

Manuel claims that Prudential and Turner violated ERISA by deficiently maintaining a document called an SPD—which must be provided to a participant "within 90 days" of participation. ERISA § 104(b)(1)(A). An SPD is designed to "reasonably apprise . . . participants and beneficiaries of their rights and obligations under the plan." ERISA § 102(a). To this end, ERISA mandates the inclusion of certain specific disclosures, including "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." ERISA § 102(b).

An SPD need not be a plan document. In other words, an SPD may not contain the contractual terms of a plan, and where an SPD conflicts with the terms of the plan document, the terms of the plan document control for purposes of ERISA § 502(a)(1)(B). *See CIGNA*, 563 U.S. at 436–37. This makes sense because ERISA § 502(a)(1)(B) provides only for the recovery of benefits due "under the terms of a plan." But SPDs are still important because they are often the primary source of information for participants trying to understand

their benefits. And when SPDs contain misrepresentations or material omissions, participants like Manuel can end up relying on the existence of benefits that the plan itself does not provide.

Manuel claims, and Prudential apparently admits, that an SPD was not provided to him "within 90 days after" he became a plan participant. Manuel further claims that the SPD did not comply with the requirements of ERISA § 102 because it did not include the plan's preexisting condition exclusion, reimbursement provision, delegation of interpretive discretion to Prudential, or the plan administrator's name. Manuel claims that these alleged deficiencies constitute a breach of fiduciary duty under ERISA § 502(a)(3) and that, accordingly, the enforcement of these plan terms would be inequitable.

Manuel cannot maintain an action for fiduciary breach under ERISA § 502(a)(3) where the alleged "injury creates a cause of action under [ERISA § 502(a)(1)(B)]." *Innova,* 892 F.3d at 733 (quotation omitted). But claims for injuries relating to SPD deficiencies are cognizable under ERISA § 502(a)(3) and not ERISA § 502(a)(1)(B).

In *CIGNA*, the Supreme Court found that an employee injured by a deficient SPD could seek equitable relief under ERISA § 502(a)(3). *CIGNA*, 563 U.S. at 443–44. Indeed, this court has recognized such a claim in circumstances like those at issue here. In *Singletary v. United Parcel Service, Inc.* an insurer denied a claim because of an exclusion contained only in the plan documents. 828 F.3d 342, 348–49 (5th Cir. 2016). Suing for benefits under ERISA § 502(a)(1)(B), Singletary argued that she had no notice of the exclusion because it was not contained in the SPD. *Id*. at 347. This court held that no claim for benefits would lie under ERISA § 502(a)(1)(B) as the insurer was simply enforcing the terms of the plan itself. *Id*. at 348. But relying on *CIGNA*, this court recognized that Singletary might have obtained relief under ERISA § 502(a)(3). *Id*. at 348–49.

7

No. 17-30835

While the district court concluded that Manuel's alleged injuries were remediable under ERISA § 502(a)(1)(B), under this court's binding precedent, they are cognizable *only* under ERISA § 502(a)(3).

On appeal, neither Turner nor Prudential offers contradictory authority. Instead, they argue that Manuel did not prove additional facts necessary to support the kind of equitable relief requested (*e.g.*, detrimental reliance) and that none of ERISA's documentary requirements were actually violated. While these arguments may prove correct, we take no position on them. Because the district court concluded that, as a threshold matter, SPD claims could not be maintained under ERISA § 502(a)(3) and dismissed all related discovery requests as moot, the district court deprived Manuel of the opportunity to establish the elements of a valid ERISA § 502(a)(3) claim. Because it is too early to tell if Manuel would have been successful in so doing, we reverse the district court's decision with respect to Turner and remand these claims to the district court for further consideration of each party's contentions.

The district court provided another justification for dismissing Manuel's SPD claims against Prudential. The district court declared that "it is not Prudential, but Turner, that is responsible for any alleged deficiencies . . . . Because Prudential is not the plan administrator."

ERISA § 101(a) notes that "[t]the *administrator* . . . shall cause to be furnished . . . a summary plan description described in [ERISA § 102(a)(1)]" (emphasis added). The district court correctly concluded that a non-administrator has no duty to provide an SPD and is generally not liable for deficiencies. *See e.g., Singletary*, 828 F.3d at 348–49 (noting that "it violates an ERISA provision for a *Plan Administrator* not to provide a valid SPD" (emphasis added)). Because the district court concluded, and no party

apparently disputes, that *Turner* is the plan administrator,[2] we affirm the district court's dismissal of Manuel's SPD claims against Prudential.

*C. Claims Administration Issues*

Manuel also raises other ERISA § 502(a)(3) claims against Prudential that the district court dismissed after ultimately concluding that they were duplicative of his ERISA § 502(a)(1)(B) claims.

Manuel claims that Prudential is liable under ERISA § 502(a)(3) because it (1) asserted new grounds for denial of his LTD benefits at the last level of appeal and (2) failed to identify the independent medical reviewer who recommended denying Manuel's claim on appeal. Manuel contends that these actions constitute a violation of ERISA's claims procedures, which require that plan participants be provided with "adequate notice in writing" of "the specific reasons" for an adverse benefit determination and an "opportunity" for "full and fair review" of such decision upon appeal. ERISA § 503.

The district court should have considered whether Manuel's alleged "injury creates a cause of action under [ERISA § 502(a)(1)(B)]." *Innova,* 892 F.3d at 733 (quotation omitted).

"[I]n an ERISA action under [ERISA § 502(a)(1)(B)], a claimant may question the completeness of the administrative record; whether the plan administrator complied with ERISA's procedural regulations; and the existence and extent of a conflict of interest created by a plan administrator's

---

[2] In a separate part of his brief, Manuel contends that Prudential should be treated as "a *de facto* administrator" for purposes of ERISA § 502(c). But since Manuel has not argued that Prudential was acting as *de facto* administrator for purposes of his ERISA § 502(a)(3) claims, we need not address this argument here. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (reciting the longstanding "rule in this circuit that any issues not briefed on appeal are waived").

dual role in making benefits determinations and funding the plan." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011) (footnotes omitted).[3] And in an unbroken line, even after *Singletary*, this court has allowed claims administration issues to be raised in ERISA § 502(a)(1)(B) causes of action. *See, e.g.*, *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 769–70 (5th Cir. 2018).[4]

Since, under existing law, plaintiffs may attack problematic administrative claims procedures under ERISA § 502(a)(1)(B), we affirm the district court's decision to dismiss these claims under ERISA § 502(a)(3).[5]

---

[3] *See also White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 769–70 n.2 (5th Cir. 2018); *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 139 (5th Cir. 2016); *Shedrick v. Marriott Int'l, Inc.,* 500 F. App'x 331, 337 n. 5, 338–39 (5th Cir. 2012); *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 150, 153–57 (5th Cir. 2009).

[4] Like his claim for alleged deficiencies in the SPD, Manuel seeks redress for an injury—failing to comply with the procedural requirements of ERISA § 503—that appears unrelated to the terms of the plan. While the plan itself might permit the assertion of new grounds for denial of claims at the last level of appeal or the nondisclosure of medical experts, ERISA might require different, more participant friendly, procedures. In such a case, a claims administrator might, under the logic in *Singletary*, skirt liability under ERISA § 502(a)(1)(B) by hewing to the terms of the plan. 828 F.3d at 348. Then, in the absence of a cause of action under ERISA § 502(a)(3), the underlying injury, caused by a violation of ERISA § 503, could go unremedied. However, this tension between remedying claims administration defects under one cause of action and summary plan description defects under another has not been raised or explored in the briefing. Further, since both *Singletary* and this court's claims administration jurisprudence represent binding precedent, correcting this inconsistency of approach would require *en banc* review.

[5] Manuel also claims that "Prudential should be estopped either to assert a recoupment claim or to invoke the pre-existing condition limitation" because "Prudential further breached fiduciary duties owed to Manuel under [ERISA § 502(a)(3)] by [inconsistently] construing plan terms." But ERISA § 502(a)(3) does not create fiduciary duties, it creates a cause of action for fiduciary breach. In his complaint, Manuel seems, in the alternative, to associate these alleged fiduciary breaches with a "fail[ure] to comply with ERISA procedures under [ERISA § 503]." Because Manuel has either not tied this allegation of injury to a particular violation of ERISA or has tied it to a violation of ERISA for which there is a remedy under ERISA § 502(a)(1)(B) (namely the claims procedure requirements in ERISA § 503), the district court correctly dismissed these claims.

## II.    Plan Benefits

### A. *The District Court's Standard of Review*

Manuel claims that the pre-existing condition exclusion in the plan documents should not be enforced to bar his recovery of disability benefits under ERISA § 502(a)(1)(B). To support this contention, Manuel claims that the district court applied the wrong standard of review to Prudential's administrative decision. The district court applied an "abuse of discretion" standard. Manuel contends that *de novo* review is appropriate. Prudential maintains that this argument has been waived on appeal and, in the alternative, that it is misplaced.

Manuel clearly requested *de novo* review in the district court, so the issue has not been waived. For example, one status order notes, "Plaintiff asserts that the *de novo* standard of review applies as to Prudential's decision to deny Plaintiffs claim for benefits." Further Manuel re-raised this issue in his motion for reconsideration/new trial. Preserving an argument on appeal requires only that the argument "be raised to such a degree that the district court has an opportunity to rule on it." *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 89 (5th Cir. 2011) (quotation omitted). The district court implicitly ruled on this claim when it applied the abuse of discretion standard. We must address the merits of Manuel's claim.

"Generally, in suits brought under [ERISA § 502(a)(1)(B)], district courts review the denial of . . . benefits . . . de novo. But, if the benefits plan the suit is brought under 'gives the administrator . . . authority to determine eligibility for benefits or to construe the [plan] terms' . . . the denial . . . is reviewed for an abuse of discretion." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 137

(5th Cir. 2016) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)) (citations omitted).[6]

While the district court's reasoning is somewhat unclear,[7] what is clear is that it applied the abuse of discretion standard. Manuel contends that while the SPD includes a delegation of discretion to Prudential, this delegation is not included in the plan documents themselves. And he claims, under *CIGNA*, such delegations included only in an SPD may not be enforced.

Prudential points to terms in the plan documents that it claims confer discretion. First, the plan indicates that a participant is "disabled when Prudential [so] determines." Second, the plan requires participants receiving benefits to "submit proof of continuing disability *satisfactory to Prudential*."

A split exists as to whether plan language requiring a claimant to submit proof of loss "satisfactory to [a claims administrator]" confers discretion. *See Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 330 (5th Cir. 2014) (identifying but not wading into the split); *Gross v. Sun Life Assur. Co. of Can.*, 734 F.3d 1, 12–16 (1st Cir. 2013) (describing the split and concluding that such language does not trigger discretion).[8]

---

[6] "'Whether the district court employed the appropriate standard in reviewing an eligibility determination made by an ERISA plan administrator is a question of law' that we review de novo." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quoting *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 269 (5th Cir. 2004)); *see also Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136–37 (5th Cir. 2016).

[7] The district court does not definitively state that it determined "after reviewing the Plan Documents, that Prudential had discretion to determine Plaintiff's STD benefits" until Manuel's motion for reconsideration/new trial.]

[8] *Compare Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 417 (3d Cir. 2011) (no discretion); *Feibusch v. Integrated Device Tech., Inc. Employee Ben. Plan*, 463 F.3d 880, 884–85 (9th Cir. 2006) (no discretion); *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 640 (7th Cir. 2005) (no discretion); *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251–52 (2d Cir. 1999) (no discretion); *with Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234 (11th Cir. 2006) (discretion); *Nance v. Sun Life Assur. Co. of Can.*, 294 F.3d 1263, 1269 (10th Cir. 2002) (discretion); *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002) (discretion); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 (6th Cir. 1998) (discretion).

Rather than jumping headlong into the fray, we elect a more restrained approach. This court has recognized that "ambiguous plan language [must] be given a meaning as close as possible to what is said in the plan summary." *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012); *see also Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1037 n. 28 (5th Cir. 2015). Here the SPD is clear. It says that the "Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." The deep circuit split as to whether the plan language constitutes an express delegation of discretion strongly suggests that the plan language is at least ambiguous. Since we must look to the SPD in cases where the plan language is ambiguous, we conclude that discretion has been delegated to the claims administrator under the plan. For this reason, we affirm the district court's application of abuse of discretion.

## B. Conflict of Interest

Manuel also contends that Prudential had a legally relevant conflict of interest that the district court wrongfully declined to consider when it reviewed Prudential's claim denial for an abuse of discretion. Granting Prudential's request for summary judgment on Manuel's ERISA § 502(a)(1)(B) claim, the district court wholly ignored Prudential's supposed conflict.

On appeal, the parties do not dispute that, under *Metropolitan Life v. Glenn*, Prudential has a structural conflict—it has a fiduciary obligation to participants as claims administrator but also suffers a direct financial loss whenever claims are paid. 554 U.S. 105, 108 (2008).

In *Glenn*, the Supreme Court concluded that "a reviewing court should consider [a structural] conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." 554 U.S. at 108. But the district court, without considering the impact

of Prudential's conflict on its claims decision, concluded that Prudential did not abuse its discretion in determining that Manuel had a pre-existing condition under the terms of the plan—a conclusion Manuel disputes.

The district court should have considered this factor and given the conflict appropriate weight. Had the district court considered the conflict, it might have permitted limited conflict discovery, and the court ultimately might have concluded that Prudential abused its discretion when it concluded that Manuel had a preexisting condition. *Crosby*, 647 F.3d at 263 n.6. We reverse the district court and remand Manuel's ERISA § 502(a)(1)(B) claim for further consideration in light of Prudential's apparent conflict.

### III.   Interference with Protected Rights

Manuel appeals the district court's dismissal of his ERISA § 510 claims against Prudential. ERISA § 510 prohibits "any person" from interfering, in various ways, with protected rights under ERISA. The district court concluded that "controlling jurisprudence from the Fifth Circuit clearly states that a valid [ERISA] § 510 claim requires an employment relationship, and [because] there was no such relationship between Prudential and the Plaintiff, Plaintiff's [ERISA] § 510 claim against Prudential fails." The district court asserted that "[t]he [Fifth Circuit] clarified the meaning of 'person' in relation to an ERISA plan to mean 'employer'"—even though "employer" and "person" are each defined terms under ERISA.

None of the cases cited by the district court support this reading of the statute. Indeed, *Heimann v. National Elevator Industry Pension Fund* states that "[t]he term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity" while "[t]he term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate,

unincorporated organization, association, or employee organization." 187 F.3d 493, 503–04 (5th Cir. 1999) (quoting ERISA § 3), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003).

The district court seems to rely on the language in *Bodine v. Employers Casualty Company*, which states, "[t]o sustain a valid [ERISA] § 510 claim, an employee must show: (1) prohibited (adverse) *employer* action (2) taken for the purpose of interfering with the attainment of (3) any right to which the *employee* is entitled." 352 F.3d 245, 250 (5th Cir. 2003) (emphasis added). And Prudential offers up a string of citations[9] in which this court has similarly described the issues under ERISA § 510 in terms of "employees" and "employers." But all of these cases involve employees suing their employers. And none of them state that a non-employer is insulated from suit under ERISA § 510.

While most circuits have concluded that an action can be maintained against a non-employer, a split exists.[10] We agree with the persuasive reasoning offered by Judge Niemeyer in *Custer v. Pan Am. Life Ins. Co.* 12 F.3d 410, 421 (4th Cir. 1993) (explaining that "Since both terms, 'employer' and 'person,' are defined by ERISA we must assume that Congress used the term

---

[9] *See Parker v. Cooper Tire & Rubber Co.*, 546 F. App'x 522, 524 (5th Cir. 2014); *Armando v. AT & T Mobility*, 487 F. App'x 877, 878 (5th Cir. 2012); *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 417 (5th Cir. 2007); *Hinojosa v. Jostens Inc.*, 128 F. App'x 364, 368–69 (5th Cir. 2005).

[10] *Compare Teamsters Local Union No. 705 v. Burlington N. Santa Fe*, LLC, 741 F.3d 819, 827 (7th Cir. 2014) (non-employers may be subject to suit); *Mattei v. Mattei*, 126 F.3d 794, 801 (6th Cir. 1997) ("[I]t is . . . appropriate to view 'employment relationship' as an illustrative but non-exclusive description of a set of rights that are protected by [ERISA] § 510 . . . ."); *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1501 n. 8 (10th Cir. 1995) (non-employers may be subject to suit); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 421 (4th Cir. 1993) (non-employers may be subject to suit); *Tingey v. Pixley-Richards W., Inc.*, 953 F.2d 1124, 1132 n. 4 (9th Cir. 1992) (sustaining an action against "an insurer who coerces an employer to fire an employee"); *with Byrd v. MacPapers, Inc.*, 961 F.2d 157, 161 (11th Cir. 1992) (holding that a "retaliatory discharge claim under § 510 of ERISA lies only against . . . [an] employer").

'person' deliberately" and concluding that the definition of "person" under ERISA § 510 includes some non-employers (citation omitted)).

Indeed, in *Heimann* this court considered a closely related question and came to a similar conclusion. Holding that ERISA § 510 protects retiree participants in an employee benefits plan, this court rejected the "conclusion that [ERISA] § 510 makes discrimination against those who exercise ERISA rights unlawful only when it affects an ongoing employment relationship [as] without support in the text or legislative history of ERISA."  187 F.3d at 508.

Accordingly, we conclude that ERISA § 510 claims may be maintained against non-employers. Since the district court dismissed Manuel's ERISA § 510 claims against Prudential solely because Manuel was not an employee of Prudential, we reverse and remand for appropriate discovery and consideration of Manuel's contentions.

## IV.  Civil Penalties

ERISA entitles participants, upon request, to information related to their benefit plans. ERISA § 104. In his complaint, Manuel sought penalties against Turner under ERISA § 502(c) because "Turner[] fail[ed] to deliver to him [upon request] the appropriate formal written and signed plan document." The district court pointed out that ERISA does not require that a plan document be signed and concluded that "because Turner provided the requested plan documents within the 30 day time period required by ERISA § 502(c) . . . Turner's *Motion for Summary Judgment* . . . is granted." It concluded that, as a matter of law, Manuel had received all the documents to which he was entitled.

But the district court ignored one of Manuel's arguments. Manuel's "allegations are not just limited to the fact that the documents are undated and unsigned." Instead he focuses on the fact that the documents produced by Turner are somewhat different from the copies provided, in the administrative

record, by Prudential. The fact that some documents contained in the administrative record were not produced by Turner might suggest that Turner did not produce all of the documents that it was required to produce under ERISA. Most importantly, Manuel alleges that the plan documents in the administrative record contain a plan amendment not included in the Turner production. Record evidence supports this contention.

Turner responds by arguing that it produced a complete SPD that included "all of the information required under ERISA and its regulations."[11] But ERISA mandates more than the production of a valid SPD upon request for plan documents. The administrator must provide documents which include the "*instruments under which the plan is established or operated.*" ERISA § 104(b)(4) (emphasis added). This court has held that "ERISA requires a plan administrator to produce plan documents upon written request from a participant or beneficiary." *Babin v. Quality Energy Servs., Inc.*, 877 F.3d 621, 624 (5th Cir. 2017) (citing ERISA § 104(b)(4)); see *also Murphy v. Verizon Commc'ns, Inc.*, 587 F. App'x 140, 144 (5th Cir. 2014) (construing ERISA § 104(b)(4) as referencing "formal legal documents that govern a plan").

Whether the amendment contained in the Prudential administrative record constitutes a formal legal document governing the plan is unclear. "[O]nly an amendment executed in accordance with the Plan's own procedures and properly noticed could change the Plan." *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 926 (5th Cir. 1995); see *also Evans v. Sterling Chemicals, Inc.*, 660 F.3d 862, 871 (5th Cir. 2011);

---

[11] Turner also argues that penalties under ERISA § 502(c) may not be assessed where there is "no evidence that [the] alleged violation[] resulted in the termination of . . . benefits."] But Turner cites inapposite caselaw from other jurisdictions describing the injury requirements of *other provisions* of ERISA. These analogies are unhelpful where, as in ERISA § 502(c), a statutory penalty exists for a specific failure—not providing certain documents upon request.

No. 17-30835

*Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360, 372 (5th Cir. 2006); *cf. Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 85 (1995) ("[W]hatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level.").

The existence of the amendment in the Prudential administrative record creates a material question of fact as to whether that amendment has been properly executed and has, accordingly, become a component of the plan. If the amendment is valid, it is part of the plan, and should have been produced by Turner. If Turner did not produce the entire plan document, the district court has "discretion" to assess a penalty. ERISA § 502(c)(1). *See Abraham v. Exxon Corp.*, 85 F.3d 1126, 1132 (5th Cir. 1996) (noting that the award is discretionary).

So, while the district court may ultimately exercise discretion as to whether and to what extent a penalty *should* be assessed, that inquiry is distinct from the question of whether Turner violated a term of ERISA for which a penalty *could* be assessed. The district court wrongly concluded, as a matter of law, that Manuel did not have a claim under which a penalty could be assessed. Because Manuel has identified record evidence supporting his contention that a penalty could be assessed, we reverse and remand the district court's resolution of Manuel's ERISA § 502(c) claim at the summary judgment stage.[12] If Manuel ultimately proves that a penalty could be assessed, the district court must freshly consider whether any such penalty is appropriate.

---

[12] Manuel also contends that he has an ERISA § 502(c) claim against Prudential because it was acting as *de facto* administrator. Manuel claims that "[t]here has been no definitive ruling in the Fifth Circuit prohibiting liability of an insurer as a *de facto* administrator under [ERISA § 502(c)]." But this is a misstatement of this court's binding jurisprudence. *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 483 (5th Cir. 2018) (stating that "the Fifth Circuit does not recognize a de facto administrator doctrine in the context of an insurance company involved in claims handling"); *see also Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 486–87 (5th

## V.  Discovery

Manuel sought discovery related to his claims for breach of fiduciary duty, for plan benefits, for retaliation, and for failure to provide documents. After hastily disposing of all of his claims, the district court simply denied Manuel's requests "as moot."

"The control of discovery 'is committed to the sound discretion of the trial court . . . .'" *Smith v. Potter*, 400 F. App'x 806, 813 (5th Cir. 2010) (quoting *Mayo v. Tri-Bell Indus., Inc.* 787 F.2d 1007, 1012 (5th Cir. 1986)). Where this court reverses the district court, the district court is ordered to consider appropriate and related discovery requests anew. Conversely, where the district court's resolution of an issue is affirmed, the dismissal of Manuel's related discovery requests are affirmed.

## VI.  Overpayment Counterclaim

Prudential maintains that it payed STD benefits to Manuel in error and the district court held that Prudential was entitled, under ERISA § 502(a)(3), to repayment. Remedies under ERISA § 502(a)(3) are limited to injunctive and "other appropriate equitable relief."

At summary judgment, the district court relied entirely on *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006). It ignored the more recent *Montanile v. Board of Trustees*, 136 S. Ct. 651, 659 (2016) until Manuel's motion for reconsideration/new trial but distinguished the facts and continued to rely on *Sereboff*. Manuel contends that *Montanile* bars fiduciaries from recovering "against the general assets of a beneficiary."

*Montanile* deals with a plaintiff, Robert Montanile, who was a participant in an ERISA-covered benefit plan that paid for medical expenses.

---

Cir. 2017). We affirm the district court's decision to dismiss Manuel's 502(c) claims against Prudential.

When Montanile was injured by a drunk driver, his medical treatment was covered. Montanile successfully sued and settled with the drunk driver. Under the plan's subrogation clause, the plan administrator sought reimbursement from the settlement for the medical expenses it had covered. When Montanile refused, the plan administrator, like Prudential, filed suit for equitable relief under ERISA § 502(a)(3).

The Court noted that "at equity, a plaintiff ordinarily could not enforce any type of equitable lien if the defendant once possessed a separate, identifiable fund to which the lien attached, but then dissipated it all. The plaintiff could not attach the defendant's general assets instead because those assets were not part of the specific thing to which the lien attached." *Montanile*, 136 S. Ct. at 659. An equitable lien may be enforced "only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (*e.g.,* identifiable property like a car). A defendant's expenditure of the entire identifiable fund on nontraceable items (like food or travel) destroys an equitable lien." *Id.* at 658.

In response to the claim that *Sereboff* blessed the enforcement of equitable liens "against a defendant's general assets[,]" the Court noted that *Sereboff* "left untouched the rule that *all* types of equitable liens must be enforced against a specifically identified fund in the defendant's possession." *Id.* So the Court stated that "the lower courts erroneously held that the plan could recover out of Montanile's general assets." *Id.* at 662; *see also Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (explaining that ERISA § 502(a)(3) refers to relief that was "*typically* available in equity" and that money damages are "the classic form of legal relief" (quotations omitted)).

The district court concluded that *Montanile*'s limitation of equitable recovery from a defendant's general assets applies only to defendants who received funds from third parties (*e.g.,* in settlement of claims) and not to

defendants who received overpayments directly from the party seeking repayment. The district court offers no explanation for this distinction, and Prudential does not defend it on appeal—acknowledging that the receipt of payments from a third party is just "one example of an overpayment[,]" logically indistinguishable from "the receipt of benefits that are mistakenly paid by an administrator."

The Supreme Court's conclusion that "*all* types of equitable liens must be enforced against a specifically identified fund in the defendant's possession" applies to the "equitable lien" on the mistakenly paid STD benefits Prudential claims to maintain. *Montanile*, 136 S. Ct. at 659 (2016). For this reason, we reverse the district court's decision to grant summary judgment to Prudential and remand the case to "determine whether [Manuel] kept his [STD benefits] separate from his general assets or dissipated the entire [amount] on nontraceable assets." *Montanile*, 136 S. Ct. at 662.[13]

## CONCLUSION

For the foregoing reasons, we REVERSE and REMAND the district court's dismissal of Manuel's claims for fiduciary breach and failure to provide documents as to Turner and his claim for plan benefits and discrimination as to Prudential. Further, we REVERSE and REMAND the district court's grant of summary judgment to Prudential on its claim for reimbursement. We AFFIRM the dismissal of Manuel's fiduciary breach and failure to provide document claims against Prudential and AFFIRM the application of the abuse of discretion standard to Manuel's claims for plan benefits. We INSTRUCT the district court to consider anew any discovery requests related to Manuel's

---

[13] Relatedly the district court awarded prejudgment interest to Prudential on this claim. Because summary judgment was improper, we vacate the award of prejudgment interest.

surviving claims. We VACATE the award of prejudgment interest to Prudential.